663 So.2d 491 (1995)
Richard S. BOURQUE, Plaintiff-Relator,
v.
Juanita D. BOUILLION, Defendant-Respondent.
No. W95-909.
Court of Appeal of Louisiana, Third Circuit.
October 18, 1995.
*492 Anthony Jerome Fontana Jr., Abbeville, for Richard S. Bourque.
Sue Fontenot, Abbeville, for Juanita D. Bouillion.
Before THIBODEAUX, WOODARD and AMY, JJ.
WOODARD, Judge.
This application for supervisory writs arises from the suspension and restriction of a father's visitation rights with his infant daughter.

FACTS
Nicole Renee Bouillion was born on April 17, 1993 to relator, Richard Bourque, and respondent, Juanita Bouillion. Bourque and Bouillion never married. Bouillion retained custody of Nicole when the couple separated in March 1994. Bourque subsequently sued for and obtained visitation rights with respect to Nicole.
After returning from daytime visits with her father on June 7 and 10, 1995, Nicole complained of pain in her vaginal area and began having "screaming" nightmares. Bouillion and her mother noticed redness on Nicole's labia after those visits. When Nicole's complaints failed to subside, they took her to the Abbeville General Hospital on June 10, 1995 and, again, on June 12, 1995 for a determination of the problem.
Dr. Henry Kaufman, the attending emergency room physician of June 10, noted moderate erythema (redness) of the labia and prescribed hydrocortisone cream. Dr. Alton Romero, the attending physician on June 12, diagnosed Nicole as suffering from diaper rash and advised Bouillion to take her to see her pediatrician in the morning.
However, Bouillion and her mother claim that Dr. Romero also suggested that they contact the Department of Social Services (DSS) because Nicole's symptoms might be consistent with child molestation. Bouillion then moved to suspend Bourque's visitation rights, pending an investigation by the DSS, alleging that Nicole had been sexually molested while she was with Bourque. Following an ex parte hearing on June 22, 1995, the trial court suspended Bourque's visitation rights with Nicole, pending the outcome of a court-ordered investigation by the DSS, and ordered Bourque to show cause on June 27, 1995 why the suspension should not be granted regarding future visitation. The DSS apparently conducted and closed an initial investigation of Bourque between June 22 and 27.
At the hearing on the rule to show cause, Bouillion presented no evidence in support of her allegations. Instead, she relied on the emergency room records and sworn affidavits, executed by herself and her mother, stating that Nicole behaved differently after she returned from Bourque's custody than she had acted before, that Nicole complained of pain in her vaginal area after visiting Bourque, that Bouillion and her mother observed redness in the child's vaginal area, and that upon taking the child to the hospital, the treating physician suggested to her that Nicole had been sexually molested. However, in the presence of the parties' attorneys, the trial judge summarized for the record a conversation between himself and Randall Gaspard, the supervisor of Family Services (part of the DSS), concerning an investigation of the matter. Gaspard reported that the investigation had been closed after Dr. Padmini Gupta, Nicole's treating pediatrician, stated that she found no signs of *493 sexual abuse when examining Nicole and that the child suffered from pinworms.
Notwithstanding, the trial court suspended Bourque's visitation rights until such time as the DSS could arrange for a supervised visit of Bourque and Nicole in the presence of DSS personnel and stated that after this visit, Bourque could resume the previously agreed upon visitation schedule as long as the visits were in the presence of at least one of Bourque's parents. Although the court did not make it a part of its order, at the hearing, it indicated that it was reopening the investigation and in the order, stipulated that Bourque's visits would also be suspended, prior to the completion of its investigation, if the DSS deemed it advisable.
Bourque then filed this application for supervisory writs, alleging that the trial court applied an incorrect standard of proof and that the court's decision to suspend his visitation rights was not supported by the evidence. Bouillion responded, arguing that Bourque's application for writs should be denied because this court may review the court's order only by devolutive appeal.

LAW

I. JURISDICTION
Bouillion argues that Bourque's application for supervisory writs should be denied because a devolutive appeal is the only appropriate mechanism by which we may review the trial court's judgment.
The trial court did not specify whether, in issuing its judgment, it relied on its power to determine reasonable visitation rights according to the best interests of the child, under La.Civ.Code art. 136, or its power to issue protective orders to protect children from abuse, under La.Ch.Code arts. 617, 618. Clearly, this court may review the trial court's judgment through supervisory writs if the court relied on Civil Code article 136, pursuant to our constitutional power to exercise supervisory jurisdiction over all cases that arise within its circuit. La. Const. Art. 5 § 10.
In contrast, the Children's Code provides that a final protective order issued under La.Ch.Code art. 617 "shall be subject to a devolutive appeal only." La.Ch.Code art. 618(D). However, even assuming that the trial court relied exclusively on its powers under the Children's Code, that Code also provides that "Applications for supervisory writs may be made to the appropriate court of appeal in accordance with applicable rules of court." La.Ch.Code art. 338. Reading these provisions together, the conclusion is inescapable that article 618 precludes only suspensive appeals as opposed to devolutive appeals, rather than as opposed to modes of review other than appeal. Consequently, we hold that supervisory writs are a permissible means of reviewing a protective order issued under the authority of La.Ch.Code arts. 617, 618.
We find precedent for this holding in the case law: despite an identical limitation clause in the source provision for La.Ch.Code art. 618(D), La.R.S. 46:2136(D), the Fifth Circuit in Keneker v. Keneker, 579 So.2d 1083 (La.App. 5 Cir.1991) partially granted an application for supervisory writs regarding a protective order. Finally, we note that permitting use of the supervisory writ mechanism would be beneficial to all parties concerned. The only effect of such a mode of review is to expedite review, which can hardly be considered inimical to the child's or the parties' interests.

II. SUFFICIENCY OF THE EVIDENCE
To obtain a restriction or suspension of Bourque's visitation rights, under either the Civil Code or the Children's Code, on the ground that Nicole was sexually abused during her stays with Bourque, Bouillion was required to prove by a preponderance of the evidence that Nicole was sexually abused at those times. La.Civ.Code art. 136; La.Ch. Code art. 617(A), (B). We must affirm the trial court's finding that this is the case unless it is manifestly erroneous. Stobart v. State, DOTD, 617 So.2d 880 (La.1993). A finding is manifestly erroneous only if it has no reasonable basis in the record viewed in its entirety. Id.
Bourque argues initially that the trial court should have been required to find that Nicole had been sexually abused by clear and *494 convincing evidence, rather than merely by a preponderance of the evidence. In support, he cites State in the Interest of A.C., 93-1125 (La. 10/17/94), 643 So.2d 743, in which the Louisiana Supreme Court held that a father may not be stripped of his parental rights as a result of his sexual abuse of his child unless the sexual abuse is proved by clear and convincing evidence. However, A.C. turned primarily on the mandatory permanence and totality of the loss of the father's parental rights as a result of the initial finding of sexual abuse, whereas in the present case Bourque has merely lost the right to unsupervised visitation. Moreover, the suspension appears to be conditioned on the outcome of the DSS investigation, and therefore not permanent unless the investigation reveals that sexual abuse has in fact occurred, and Bouillion stated at the hearing, through her attorney, that she would permit Bourque to make up for any missed visitation upon a finding by the OCS that no sexual abuse had occurred. Consequently, A.C. is not dispositive in this case, and we will apply the preponderance standard of La.Civ.Code art. 136 and La.Ch.Code arts. 617, 618.
In the absence of an express provision to the contrary in the Children's Code, the provisions of the Code of Evidence applicable to civil proceedings also apply to juvenile proceedings. La.Ch.Code art. 105. Bouillion's and her mother's affidavits and the judge's summary of statements made by the emergency room physicians and DSS personnel are inadmissible hearsay because they are statements that were not made by the declarant while testifying at the present hearing, they were offered in evidence to prove the truth of the matter asserted, and they do not fall within any of the hearsay exclusions or exceptions. La.Code Evid. art. 801(C). However, hearsay evidence not objected to constitutes substantive evidence that may be used to the extent of any probative or persuasive power that it may have. State v. Franklin, 520 So.2d 1047 (La.App. 3 Cir.1987). As neither party objected to the introduction of the affidavits or statements, we will consider them as substantive evidence.
We find that the court erred manifestly in finding that there was cause for the limitation of Bourque's visitation based on the record before it. The emergency room medical records indicate that the child suffered only from diaper rash and a statement by Dr. Gupta that the child suffered from pinworms. Bouillion bore the burden of establishing sexual abuse, but failed to produce Dr. Gupta, Dr. Romero, Dr. Kaufman, DSS personnel or even herself in support of her allegation. The only evidence upon which Bouillion relies are the affidavits, in which she and her mother claim that Dr. Romero suggested to her that sexual abuse may have occurred. This is not evidence, but mere speculation. While such a suggestion might reasonably lead to further investigation, it may not validly lead to suspension of parental visitation rights without more. We recognize the importance of protecting children from sexual abuse and even possible sexual abuse, but we cannot countenance imposing such a severe sanction on a parent and branding a parent solely on the basis of unsubstantiated speculation of impropriety, especially with all medical evidence supporting the contrary. We also note that DSS had apparently already conducted an investigation and found no abuse. Thus, it is perplexing why the court ordered another investigation when the record does not indicate any new evidence. Therefore, we hold that the trial court erred manifestly in suspending and limiting Bourque's visitation rights with his daughter and reverse said judgment.

CONCLUSION
For the foregoing reasons, we hold that the trial court erred in granting respondent's motion to suspend relator's visitation rights with his minor child on the grounds that the child was abused while she was with relator, because respondent has failed to carry her burden of proving that the child has been sexually abused. We reverse the June 30, 1995 order of the trial court suspending and restricting relator's visitation rights with his child.
WRIT GRANTED AND MADE PEREMPTORY.