788 So.2d 1286 (2001)
Martin W. HENRY
v.
STATE of Louisiana, DEPARTMENT OF PUBLIC SAFETY.
No. 01-0103.
Court of Appeal of Louisiana, Third Circuit.
June 27, 2001.
*1287 James E. Burks, Attorney at Law, Lake Charles, LA, Counsel for Martin W. Henry.
Paul Schexnayder, Attorney at Law, Baton Rouge, LA, Counsel for State of Louisiana, Department of Public Safety.
Court composed of Chief Judge NED E. DOUCET, JR., HENRY L. YELVERTON, and ELIZABETH A. PICKETT, Judges.
YELVERTON, Judge.
Louisiana Revised Statute 32:667 provides for suspension of driving privileges for refusing to submit to a chemical test for intoxication after a person has been placed under arrest for operating a vehicle while under the influence. On December 12, 1999, at 1:30 in the morning, the sheriff's office in Calcasieu Parish stopped Martin Henry when they saw him driving in the wrong lane with his lights off. Their attention had been called to him by screeching tires, and they saw three cars avoid hitting him. When they talked to him, they detected an odor of alcoholic beverages. He had slurred speech and glassy, bloodshot eyes. He admitted that he had been at a company Christmas party where he had two beers. When he was asked to participate in a field sobriety test, he refused. He was arrested and taken to the station where he was asked to participate in a chemical test for intoxication, and he refused that, too. His driver's license was seized pursuant to the statute for refusing to submit to the chemical test.
Following the procedure provided by Louisiana Revised Statute 32:668, he asked for an administrative hearing which was granted. The suspension was upheld. He then sought review by the district court where the court ruled in favor of Mr. Henry reversing the administrative suspension of his driver's license.
*1288 In oral reasons for judgment, the district court gave as its sole reason for overturning the suspension, its finding that Mr. Henry had been arrested for refusing to participate in a field sobriety test at the scene of the initial stop. In other words, the court was of the opinion that based upon the testimony of law enforcement officers, the Plaintiff was arrested only because he refused to take the field sobriety test, not because the officers had reasonable grounds to believe that he was driving a motor vehicle while under the influence of alcoholic beverages.
The Department of Public Safety appeals. We reverse and reinstate the Department's order of suspension.
The license suspension provision of the Implied Consent Law, La.R.S. 32:661-668, is not punitive but rather a civil remedial measure. Butler v. Dept. of Public Safety & Corr., 609 So.2d 790 (La. 1992). A person seeking judicial review of a driver's license suspension under Louisiana Revised Statute 32:668 is entitled to a trial de novo. Flynn v. Dept. of Public Safety & Corr., 608 So.2d 994 (La.1992). The Department has the burden of proof. Guillot v. State of La., Dept. of Pub. Safety, 380 So.2d 1250 (La.App. 3 Cir.1980), writ denied, 384 So.2d 795 (La.1980).
Louisiana Revised Statute 32:668(A)(1) includes in the scope of the hearing to which Mr. Henry was entitled the following issue:
Whether a law enforcement officer had reasonable grounds to believe the person, regardless of age, had been driving or was in actual physical control of a motor vehicle upon the public highways of this state while under the influence of either alcoholic beverages or any abused substance or controlled dangerous substance as set forth in R.S. 40:964.
Under this language the trial court's inquiry goes to whether the arresting officer had reasonable grounds to believe an operator was driving while under the influence, something less than probable cause. Musso v. Louisiana Dept. of Public Safety, 93-1243, p. 2 (La.App. 4 Cir. 2/11/94); 632 So.2d 826. Thus, the inquiry at the de novo hearing in this case was to determine whether the arresting officers had reasonable grounds to believe that Mr. Henry was driving while under the influence of alcohol.
The Department called three witnesses to establish "reasonable grounds." Deputy Alan Cormier was the first to testify. A fifteen-year employee with the Calcasieu Parish Sheriffs Office, he observed Mr. Henry after he had been arrested and was brought to the station. He testified that Mr. Henry refused to submit to the Intoxilyzer test. Although Deputy Cormier did not see Mr. Henry before he was arrested, Deputy Cormier's testimony of his observations after the arrest confirms that of the arresting officers about Mr. Henry's condition. Deputy Cormier testified that he detected a strong odor of alcoholic beverage. Mr. Henry "wasn't, you know, standing properly," and his eyes were "puffy" and "bloodshot red." He talked "fairly well." His speech "wasn't real slurred, like someone who, you know, is drooling all over himself." He was "very aggressive, very uncooperative."
Deputy Dennis Hanisee, at the scene of the stop, observed Mr. Henry driving without headlights and on the wrong side of the road. He testified that Mr. Henry was "kind of slow in speech," "kind of slurred," and he smelled of alcohol. His report indicated that Mr. Henry exhibited extreme effects of alcohol. Hanisee was in training and testified this was his "first DWI test." He was queried by the trial judge, "At what junction of this episode was the decision made to arrest the defendant or the plaintiff in this particular case, when he refused the field sobriety test?" Hanisee answered, "Yes, Sir."
*1289 Deputy Mark Clark, who was training Hanisee, heard the sound of screeching tires and saw three vehicles have to avoid being hit. He observed Mr. Henry driving on the wrong side of the street. He testified that after they stopped him, he smelled a strong odor of alcohol on Mr. Henry's breath and Mr. Henry was continuously leaning up against his truck. He testified that Mr. Henry's speech was "slightly slurred." Deputy Clark testified that it was his decision to place Mr. Henry under arrest for suspicion of driving under the influence of alcohol. The trial judge asked Deputy Clark, "Was he arrested for not doing a field sobriety test?" The deputy responded, "Well, if he would've done a field sobriety test, that would have shown whether he could haveyou know, if he wasn't under the influence, if he could have driven away with no problems, or if he had been under the influence. Since he refused the field sobriety, we had to assume that he was... under the influence...." Officer Clark explained later that they would not have arrested him just for not taking the field sobriety test, but that, "We arrested him on the observation. We had nothing else to go on but our observations."
We agree with the trial court that the evidence shows that Henry was arrested at the point when he refused to take the field sobriety test. However, it is a mistake to say that was why they arrested him. That was merely one of a number of circumstances combining to furnish reasonable grounds to believe he had been driving under the influence. In State v. Janise, 528 So.2d 245 (La.App. 3 Cir.1988), where the issue was probable cause to arrest, we considered the refusal to submit to field sobriety tests, along with other circumstances, in finding that there was probable cause to arrest for DWI. Here, Louisiana Revised Statute 32:668(A)(1) requires only a showing of reasonable grounds, something less than probable cause.
In the present case, the arresting officers saw him driving on the wrong side of the road without headlights. Other cars had to avoid hitting him because he was in the wrong lane. When he was stopped, Mr. Henry admitted his headlights were not on. All three testifying officers detected an odor of alcohol and slurred speech. He admitted to having had two beers at a company Christmas party. The two arresting officers stated he was leaning on his truck for support, and all three deputies noted he was not standing up straight. Based on this evidence, the officers had reasonable grounds to believe he was driving under the influence. While the arrest took place right after he refused to take the field sobriety test, it is incorrect to say that the refusal to take the field sobriety test caused him to be arrested. It was only the last triggering event before the arrest. As explained by Deputy Clark, it was the last triggering event because, without evidence of sobriety that might have been revealed by the field tests, the deputies had no reason to think otherwise than that he was under the influence. They had reasonable grounds to so believe.
The decision of the trial court is reversed. The administrative suspension by the Department is reinstated. Costs are assessed to Martin W. Henry.
REVERSED AND REMANDED.