978 So.2d 957 (2007)
Harry J. MILLEN, Jr.
v.
STATE of Louisiana DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS.
No. 2007 CA 0845.
Court of Appeal of Louisiana, First Circuit.
December 21, 2007.
*959 Alan J. Robert, Gonzales, Louisiana, for Plaintiff/Appellee, Harry J. Millen, Jr.
Michael C. Barron, Baton Rouge, Louisiana, for Defendant/Appellant, State of Louisiana Department of Public Safety and Corrections.
Before PARRO, KUHN and DOWNING, JJ.
KUHN, J.
The Louisiana Department of Public Safety and Corrections, Office of Motor Vehicles ("the Department") appeals the district court's judgment that recalled the suspension of Harry J. Millen, Jr.'s driving privileges. We reverse and reinstate the administrative law judge's decision that upheld the Department's suspension.

I. PROCEDURAL AND FACTUAL BACKGROUND
Based on an affidavit of arrest signed by the arresting officer, Mr. Millen was arrested on May 5, 2006, for a violation of La. R.S. 14:98, operating a vehicle while intoxicated. After being advised of his rights and the consequences of refusing to submit to a chemical test for blood alcohol, Mr. Millen refused to submit to the test. Mr. Millen's driver's license was seized, and he was issued a temporary receipt of license in accordance with La. R.S. 32:667(A)(1).
Mr. Millen requested a hearing to challenge the Department's proposed suspension of his driving privileges. During a July 24, 2006 administrative hearing, captioned Department of Public Safety and Corrections in the Matter of Harry J. Millien, Jr., Docket No. 2006-2488-PS, the Department introduced the arrest affidavit into evidence over Mr. Millen's objection.[1] Based on the arrest affidavit, the administrative law judge ("ALJ") affirmed the Department's proposed suspension of Mr. Millen's driving privileges in a July 25, 2006 decision and order.
Mr. Millen then filed a petition in the district court, seeking review of the final order of suspension.[2] He challenged the suspension on the sole basis that the arrest affidavit had not been notarized in accordance with La. R.S. 35:12, which specifies various information that a notary must include in notarized documents.
During the district court hearing, the parties submitted the matter to the district court "on the record, along with evidence that we've offered today." The parties stipulated to a list of items that were submitted as evidence. The Department introduced:

*960 1) The arrest affidavit, which was signed by the arresting officer and notarized by "Sgt. M.L. Calamia." The affidavit includes the notary's name, both printed and signed, and the number "40771," which appears after Sgt. Calamia's signature.[3]
2) An October 3, 2006 certification from the Louisiana Secretary of State, which certifies that "Manuel Lynn Calamia ID# 40771 is a valid Ex Officio Notary Public for the Department of Public Safety. . . . [Calamia] was appointed and commissioned on September 15, 1993."
3) The ALJ's July 25, 2006 decision and order.
Mr. Millen introduced a decision and order in an unrelated administrative proceeding, Department of Public Safety and Corrections in the Matter of Rodney Thomas, Docket No. 2006-0712-PS, wherein the ALJ recalled a proposed suspension of driving privileges based upon a finding that the arrest affidavit did not comport with the provisions of La. R.S. 35:12(B) and (C); the ALJ found it neither bore the notary identification number nor identified the person who notarized the document as either a notary or an ex-officio notary.
In the instant case, the district court ordered judgment in favor of Mr. Millen and against the Department, recalling the suspension of Mr. Millen's driving privileges. The district court reasoned that the arrest affidavit "should not have been admitted" because the notary had not complied with La. R.S. 35:12(C), which requires an ex officio notary to "clearly indicate his actual position or title from which his authority to notarize is derived, in addition to his notary identification number." The Department has appealed, asserting the district court erred in not considering the arrest affidavit and in recalling the suspension.

II. ANALYSIS
Part XIV of Chapter 3 of Title 32, of the Motor Vehicles and Traffic Regulation, of Louisiana's Revised Statutes regulates "Tests for Suspected Drunken Drivers." See La. R.S. 32:661 et seq. Any person operating a motor vehicle upon the public highways of the state are deemed to have consented to chemical testing for alcohol or drug usage if arrested for any offense arising out of acts alleged to have been committed while driving or in control of the vehicle. La. R.S. 32:661(A)(1). The tests shall be administered at the direction of a law enforcement officer "having reasonable grounds to believe the person . . . to have been driving . . . a motor vehicle upon the public highways . . . while under the influence of either alcoholic beverages or any abused substance or controlled dangerous substance. . . ." La. R.S. 32:661(A)(2)(a). When an officer requests that the person submit to a chemical test, he must follow certain procedures that include advising the driver that his driving privileges can be suspended for refusing to submit to the chemical test. La. R.S. 32:661(C).
Louisiana Revised Statutes 32:666(B) provides that if the motorist refuses to submit to the chemical test after being informed of the consequences of such refusal, *961 the officer shall submit a sworn report stating that he had "reasonable grounds to believe that the arrested person had been driving or was in actual physical control of a motor vehicle upon public highways of this state while under the influence of alcoholic beverages or any abused or illegal controlled dangerous substance. . . ." The consequences of such a refusal are the seizure of his license and subsequent automatic suspension for a period of time, unless the person requests an administrative hearing within 15 days. La. R.S. 32:666 and 667.
When the driver requests a hearing, the state must prove the officer had "reasonable grounds" to believe the person had been driving a motor vehicle upon the public highways while under the influence of alcohol, that the person was placed under arrest and advised by the officer as provided in La. R.S. 32:661, and that the driver refused to submit to the test on request (or that he voluntarily submitted to the chemical test and the blood alcohol reading was in excess of the statutory limit). See La. R.S. 32:668(A); Henry v. State, Dep't of Public Safety, 01-0103, p. 2 (La.App. 3d Cir.6/27/01), 788 So.2d 1286, 1288. After departmental remedies have been exhausted, the driver has the right to file a petition for judicial review. See La. R.S. 32:668(C). On such review, the district court is required to conduct a trial de novo to determine the propriety of the suspension. Flynn v. State, Dep't of Public Safety & Corr., 608 So.2d 994, 995-96 (La.1992).[4] Such a trial is a civil action amenable to all of the ordinary rules of procedure and proof. Meyer v. State, Dep't of Public Safety License Control and Driver Improvement Div., 312 So.2d 289, 292 (La.1975). Further, the fact that this is an action for judicial review of a decision resulting from an administrative hearing does not change the burden of proof placed by law on the plaintiff. Id.
In the instant case, however, Mr. Millen introduced no evidence challenging the propriety of his suspension other than a decision and order in an unrelated administrative proceeding. In support of its action, the Department introduced the arresting officer's notarized affidavit. Pursuant to La. R.S. 32:666(B), the arresting officer is required to "submit a sworn report in a form approved by the secretary" establishing the reasonable grounds supporting his belief that the arrested person had been driving a vehicle while intoxicated. In the instant case, the arresting officer, Trooper D. Bergeron, used the approved form, which includes basic affidavit language and provides blanks to be filled in by the arresting officer to provide the details of the individual arrest. The form indicates that the arresting officer is to appear before a "notary or other person qualified to give oath" when providing his sworn statement.
Trooper Bergeron's affidavit states that he appeared before Sgt. Calamia and, after being duly sworn, said that on May 5, 2006, at 2116 hours, Mr. Millen was arrested for "a violation of La. R.S. 14:98 . . . while intoxicated." The affidavit further states the arrest was made upon reasonable grounds to believe the offense had *962 been committed by Mr. Millen based on the following information:
Subject turned left in front of [an Ascension Parish Sheriff's Office deputy vehicle] from LA 431 onto LA 934. . . . [Deputy] had to hit brakes hard to keep from hitting subject[']s vehicle.
Upon coming into personal contact with Mr. Millen, Trooper Bergeron detected "[b]lood shot glassy eyes, slow slurred speech, [and that Mr. Millen was] unable to stand without holding onto side of truck."
The district court determined that the ALJ had improperly considered the arresting officer's affidavit because it did not comply with La. R.S. 35:12, which provides, in pertinent part, as follows:
A. (1) Notaries shall insert in their acts the Christian names and surnames of the parties in full and not their initial letters alone or the full names of the parties and not their initial letters alone, together with the permanent mailing addresses of the parties, and shall print or type the full names of the witnesses and of themselves under their respective signatures.
(2) For the purposes of this Section, a full name or a name in full shall include at least one given name and other initials in addition to the surname. It may be any combination of first name and middle initial or initials, if any, and the surname; or the first initial and at least one middle name and the surname; or the complete first and middle name or names and the surname. The notary shall type, print, or stamp his or her name as it appears on his or her commission.
B. Every document notarized in this state shall bear the notary identification number assigned by the secretary of state, except that if the notary is an attorney licensed to practice law in this state, he may use his Louisiana state bar roll number in lieu of his notary identification number. The number shall be typed or printed legibly and placed next to the typed, printed, or stamped name of the notary as required by Subsection A of this Section.
C. No person other than a regularly commissioned notary public shall use the title "Notary Public." Every person, other than a regularly commissioned notary, who is otherwise given notarial powers or authorized as a notary ex officio, shall clearly indicate his actual position or title from which his authority to notarize is derived, in addition to his notary identification number.
D. (1) Any document notarized in this state on or after January 1, 2005, submitted for filing or recording in the office of notarial records, register of conveyances, or recorder of mortgages in and for the parish of Orleans, or in the office of any clerk of court or recorder of mortgages or conveyances may be refused by the clerk or his employee if the document fails to contain the notary identification or attorney bar roll number and the typed, printed, or stamped name of the notary and the witnesses. However, documents filed in the civil or criminal suit records of any court shall not be subject to the provisions of this Subsection.
(2) Except as otherwise provided in this Section, no state office, agency, department, or political subdivision shall accept, file, or record any document notarized in this state on or after January 1, 2005, unless the document contains the notary identification or attorney bar roll number and the typed, printed, or stamped name of the notary and the witnesses.
On appeal, Mr. Millen asserts the arrest affidavit does not comply with La. *963 R.S. 35:12 because Sgt. Calamia, who notarized the form, did not: 1) insert either his full first or middle name in addition to his surname; 2) designate whether he is a notary or ex-officio notary; 3) identify the five numbers after his signature as either a bar roll number, notary number, or badge number; or 4) specify the parish and the length of his commission. Sgt. Calamia did not specify in his notarization of the arrest affidavit that he was an ex-officio notary. During the district court proceeding, however, the Department introduced a certificate from the Secretary of State, confirming that its records indicate that Sgt. Calamia is a valid ex-officio notary for the Department and that he was appointed and commissioned as such on September 15, 1993.[5] In contrast, we note that Mr. Millen did not introduce any evidence challenging Sgt. Calamia's status as an ex-officio notary.
Although Mr. Millen argues that the affidavit in question is deficient because it does not specify the notary identification number, we find no merit in this argument because the number is clearly printed on the affidavit. Louisiana Revised Statutes 35:12(B) does not require the notary to specifically delineate the number as a notary identification number or differentiate it from an attorney bar roll number. Likewise, La. R.S. 35:12 does not specifically require the notary to specify the parish and the length of his commission, although it does require the notary to indicate his actual position or title from which his authority is derived. See La. R.S. 35:12(C).
A review of the affidavit, however, reveals that Sgt. Calamia did in fact fail to designate his ex-officio notary status, which would have indicated the title from which his authority to notarize is derived. Further, Sgt. Calamia also failed to include either his full first or middle name. However, although the affidavit does not comply with all of the requirements of La. R.S. 35:12, that deficiency does not invalidate the affidavit. See Hamilton v. Royal Intern. Petroleum Corp., 05-846, pp. 11-12 (La.2/22/06), 934 So.2d 25, 33, cert denied, ___ U.S. ___, 127 S.Ct. 937, 166 L.Ed.2d 704 (2007);[6]Succession of Adler, 334 So.2d 799, 800 (La.App. 4th Cir.1976); American Bank & Trust Co. v. Michael, 244 So.2d 882, 884 (La.App. 1st Cir.), writ *964 not considered, 258 La. 368, 246 So.2d 685 (1971).
In the present case, La. R.S. 35:12(D) imposes the only applicable penalties should the notary fail to perform his mandatory duties under Subsections (A), (B), and (C). See Hamilton, 05-846 at p. 11, 934 So.2d at 33. Insofar as it is relevant to the facts of this case, Subsection (D)(1) provides that a clerk of court may refuse a notarized document if it fails to comply with the requirements of Subsections (A) and (B). This penalty provision, however, is not applicable to documents filed in a civil suit record of any court.
Louisiana Revised Statutes 35:12(D)(2) further states, "Except as otherwise provided in this Section, no state office, agency, department, or political subdivision shall accept, file, or record any document notarized in this state on or after January 1, 2005, unless the document contains the notary identification or attorney bar roll number and the typed, printed, or stamped name of the notary and witnesses." We interpret the words, "Except as otherwise provided in this Section," as referencing the exception in the previous paragraph for documents fried in the civil or criminal suit records of any court. Thus, we conclude that the penalty provisions of Subsection (D) do not bar consideration of the affidavit in the present civil suit. Sgt. Calamia's failure to include his full name and his failure to specify his ex-officio notary status does not invalidate the affidavit; La. R.S. 35:12 does not prescribe this penalty. Thus, under the facts of this case, the district court erred in not considering the affidavit in determining whether Mr. Millen's suspension was warranted under La. R.S. 32:661 et seq.
We find the arresting affidavit sets forth sufficient facts establishing that Trooper Bergeron had reasonable grounds to believe that Mr. Millen had been driving while under the influence of alcohol, had been arrested, and had been advised by Trooper Bergeron as to his rights before Mr. Millen refused to submit to the chemical test. See La. R.S. 32:668(A). Mr. Millen failed to introduce any countervailing evidence to support his claim that the suspension imposed by the Department was not warranted.

III. CONCLUSION
For these reasons, we reverse the district court's judgment that recalled the suspension of Mr. Millen's driving privileges. The ALJ's decision upholding the Department's suspension of Mr. Millen's driving privileges is hereby reinstated, with such suspension to be administered in accordance with law by the Department. Appeal costs are assessed against Mr. Millen.
REVERSED; ADMINISTRATIVE LAW JUDGE DECISION REINSTATED.
NOTES
[1] Although our appeal record does not contain the administrative record or a transcription of this hearing, the parties acknowledged during oral arguments before this court that no testimony was adduced at the hearing and only the arrest affidavit was introduced into evidence.
[2] The district court granted a temporary restraining order that prohibited the Department from suspending Mr. Millen's driving privileges prior to the district court hearing.
[3] An affidavit is generally inadmissible as hearsay, but hearsay evidence that is not objected to constitutes substantive evidence. See State v. Allen, 03-2418, p. 25 (La.6/29/05), 913 So.2d 788, 807, cert. denied, 547 U.S. 1132, 126 S.Ct. 2023, 164 L.Ed.2d 787 (2006); Bourque v. Bouillion, 95-909, p. 5 (La.App. 3d Cir. 10/18/95), 663 So.2d 491, 494. During the district court hearing, Mr, Millen did not raise any objection to the arrest affidavit being admitted into evidence; thus, it was properly considered as substantive evidence.
[4] The court determined that the judicial review authorized by La. R.S. 32:668(C), which references La. R.S. 32:414, is a trial de novo. Although these statutes have been amended several times since Flynn was decided, the statutory language supporting the Flynn holding still remains intact. Accordingly, the district court is not restricted to a review of the ALJ's findings; the district court's judicial review can encompass the calling of witnesses, the taking of testimony and the introduction of evidence. Flynn, 608 So.2d at 997-98.
[5] Various revised statutes authorize the appointment of ex-officio notaries to administer oaths or exercise any or all of the functions, powers, and authority of a notary insofar as they are related to and required for the operation of the office, agency, or department under which the authority is granted. La. R.S. 35:392.1 et seq. Pursuant to La. R.S. 35:393 and 393.1, the secretary of the Department is authorized to designate certain officers and appoint them as ex-officio notaries public. These ex-officio notaries are authorized to perform specified acts, such as administering oaths and receiving sworn statements, without the necessity of giving bond. La. R.S. 35:392(A), 393(B), and 393.1(B) and (C). Separation from the employ of the Department terminates the powers of the ex-officio notary public. See La. R.S. 35:392.1(A) and 393.1(D).
[6] In reversing the annulment of a tax sale based upon the tax collector's failure to provide a post-tax sale notice to the taxpayer as required by La. R.S. 47:2180, the Hamilton court determined the statute did not provide any penalty or remedy upon the tax collector's failure to perform this mandatory duty. The court reasoned, in part, "We are not unmindful that the word "shall", for purposes of statutory construction, denotes a mandatory duty. . . . However statutes classified as mandatory prescribe, in addition to requiring the doing of the thing specified, the result that will follow if they are not done. . . . [I]t is not the function of the judicial branch in a civilian legal system to legislate by inserting penalty provisions into statutes where the legislature has chosen not to do so." Hamilton, 05-846 at p. 11, 934 So.2d at 33.