CHUTZ, J.
In this administrative review proceeding, petitioner-appellant, William T. Bloom, appeals the district court's judgment, which affirmed the decision of the administrative law judge (ALJ) of the State of Louisiana, Department of Public Safety and Corrections, Office of Motor Vehicles (DPSC), suspending his driving privileges. We deny appellant's motion to strike, affirm in part and vacate in part the district court's judgment, and remand.[1]
FACTUAL AND PROCEDURAL BACKGROUND
On September 5, 2015, in response to a call from dispatch as a result of a witness complaint about a vehicle driving east on Interstate 12, which was swerving and running other vehicles off the road, Louisiana State Police Trooper Jeffrey Louviere drove to the Robert Supermarket in Robert, Louisiana. There, the complaining witness identified Bloom's vehicle, which had exited the interstate and traveled northbound on Highway 445 to the supermarket where it had come to a stop in front of one of the gas pumps. When Bloom failed to exit the vehicle at Trooper Louviere's request, the trooper walked up to the vehicle and observed Bloom asleep with a lit cigarette *1037 in his mouth and his foot on the brake. The vehicle's engine, which was in the drive position, was running. Trooper Louviere knocked on the window, identified himself, and ordered Bloom out of the vehicle. Bloom exited the vehicle and shortly after advised Trooper Louviere that he was tired.[2] Bloom performed a field sobriety test as directed by Trooper Louviere. Based on Trooper Louviere's observation of indicators of impairment, Bloom was arrested and charged with a first offense of driving while intoxicated (DWI).[3]
Trooper Louviere transported Bloom to the Southeastern Louisiana University Police Department where he read the rights form related to chemical tests for intoxication to Bloom, who signed it. Trooper Louviere then conducted a breathalyzer which yielded 0.000 grams percent blood alcohol concentration. Trooper Louviere subsequently concluded that Bloom had refused to consent to a request to provide a sample of urine for chemical testing and took Bloom's driver's license, effectively suspending Bloom's driving privileges.
Bloom timely requested an administrative hearing. A telephonic hearing was conducted and the ALJ upheld the suspension. Bloom filed a petition for an administrative review in the Nineteenth Judicial District Court. After a hearing at which testimonial and documentary evidence was adduced, in a judgment dated December 20, 2016, the district court affirmed the decision of the ALJ, ordering the suspension of Bloom's driving privileges for 365 days, decreeing that he was eligible for a restricted, hardship driver's license, and requiring that he have an ignition interlock device installed for the duration of the suspensive period. Bloom suspensively appealed.
VIABLILITY OF THE APPEAL
It is undisputed that after the appeal was lodged, Bloom's driving privileges were reinstated.[4] According to La. R.S. 32:667H(1):
When any person's driver's license has been seized, suspended, or revoked, and the seizure, suspension, or revocation is connected to a charge or charges of violation of a criminal law, and the charge or charges do not result in a conviction, plea of guilty, or bond forfeiture, the person charged shall have his license immediately reinstated.
Because La. R.S. 32:667(H) required the reinstatement of Bloom's license given that it is undisputed that the prosecuting authority has permanently refused to prosecute, there is no statutory authority for the suspension of his driving privileges under La. R.S. 32:661 -670. See In re Lafleur , 2012-1227 (La. App. 3d Cir. 3/6/13), 129 So.3d 540, 545 (interpreting Brooks v. Louisiana Dep't of Pub. Safety & Corrs., 2011-71 (La. App. 3d Cir. 6/1/11), 66 So.3d 1236, 1238, writ denied, 2011-1977 (La. 11/14/11), 75 So.3d 948 ).
*1038 Despite the reinstatement of his driving privileges, Bloom nevertheless maintains that the appeal is properly before this court to clear his driver's record, protect his professional career as a commercial pilot, assure that individuals who drive this State's highways are properly afforded the protections of La. R.S. 32:661 et seq. , and "prevent unconstitutional searches by law enforcement." Bloom has also requested the expungement from his driving record of any entry of the suspension of his driving privileges, and that this court issue an order rescinding the suspension.
Reinstatement of driving privileges is not equivalent to the invalidity of the suspension. See Nunnally v. State, Dep't of Pub. Safety & Corr., 95-356 (La. App. 3d Cir. 10/4/95), 663 So.2d 254, 257 ; see also Murphy v. State through Dep't of Pub. Safety, 93-1228 (La. App. 3d Cir. 5/4/94), 640 So.2d 546, 548 (statutory reinstatement does not affect the validity of the underlying suspension, or affect the validity of a prior refusal); accord Michelli v. Louisiana Dep't of Pub. Safety & Corr. , 94-1205 (La. App. 1st Cir. 4/7/95), 654 So.2d 466, 468, writ denied, 95-1076 (La. 5/5/95), 654 So.2d 1087 (statutory reinstatement of driving privileges did not preclude use of the motorist's prior refusal to take a chemical test in determining duration of the suspension in a subsequent refusal to take a chemical test). Accordingly, we conclude that the appeal is properly before us.
SUSPENSION OF DRIVER'S LICENSE
On review of the administrative suspension of a driver's license pursuant to the implied consent law, the district court is required to conduct a trial de novo to determine the propriety of the suspension. Such a trial is a civil action amenable to all of the ordinary rules of procedure and proof. Schexnaydre v. State, Dep't of Pub. Safety & Corr., 2011-1420 (La. App. 1st Cir. 11/2/12), 111 So.3d 345, 348.
All licensed drivers on state highways impliedly consent to any number of tests to determine intoxication. See Butler v. Dep't of Pub. Safety and Corr., 609 So.2d 790, 792 (La. 1992). According to the salient provisions of La. R.S. 32:661A(1):
Any person ... who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent ... to a chemical test or tests of his blood, breath, urine, or other bodily substance for the purpose of determining the alcoholic content of his blood, and the presence of any abused substance or controlled dangerous substance....
The parameters for testing are set forth in La. R.S. 32:661A(2)(a), which provides in pertinent part:
The test or tests shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person ... to have been driving or in actual physical control of a motor vehicle upon the public highways of this state while under the influence of either alcoholic beverages or any abused substance or controlled dangerous substance.... The law enforcement agency by which such officer is employed shall designate in writing and under what conditions which of the aforesaid tests shall be administered.
The provisions of La. R.S. 32:661C, which establishes the procedure for informing an arrested person of his rights concerning testing, states in relevant part,
(1) When a law enforcement officer requests that a person submit to a chemical test as provided for above, he shall first read to the person a standardized form approved by [DPSC]. [DPSC]
*1039 is authorized to use such language in the form as it, in its sole discretion, deems proper, provided that the form does inform the person...
(b) That his driving privileges can be suspended for refusing to submit to the chemical test....
(2) In addition, the arresting officer shall, after reading said form, request the arrested person to sign the form.
In each instance that a person submits or refuses to submit to a chemical test, after having been advised of the consequences of such refusal or submission as provided for in La. R.S. 32:661C, the officer shall submit a report in a form approved by the secretary, which requires that he certify, among other things, that he followed the procedure in informing such person of his rights in accordance with Subsection C, and that such person either submitted to the test or refused to submit to the test upon the request of the officer. La. R.S. 32:666(B). The seizure of a person's driver's license by a law enforcement officer is mandated if the person refuses to submit to an approved chemical test for intoxication when the officer places the person under arrest for a DWI. See La. R.S. 32:667A.
On appeal, Bloom asserts that the rights form related to chemical tests for intoxication was ambiguous and unclear as written, noting that he agreed to three tests before he was asked by Trooper Louviere to provide a urine sample. Relying on Schexnaydre, 111 So.3d 345, he maintains that the record fails to establish he was properly informed of the consequences of a failure to submit to a subsequent chemical test after he initially submitted to a breathalyzer test as required under La. R.S. 32:661C.
Examining a form nearly identical in expression to the one signed by Bloom, the Schexnaydre court noted that although the form properly advised a driver of the consequences arising from his failure to submit to the first chemical test that law enforcement sought to administer, it was ambiguous and contained inherent contradictions when utilized to administer subsequent tests because it continually referenced a singular test. And while the introductory paragraph of the form provided that the driver may be required "to submit to a chemical test or tests," the remainder of the one-page form referenced "the chemical test" a number of times and the consequences for failure to submit to "the chemical test," indicating a single test in each instance. Schexnaydre, 111 So.3d at 350. Due to the ambiguity in the form, coupled with the arresting officer's statement to the driver that it "was up to [the driver]" whether the driver was required to take a subsequent chemical test, the Schexnaydre court concluded that the driver had not been adequately informed of the consequences of refusing to take the subsequent chemical test. Schexnaydre, 111 So.3d at 351.
The DPSC-approved form that Bloom signed differs in language from the form under review by the Schexnaydre court in that it contains two additional sentences. Toward the bottom of the form contained in this record are three lines, located side by side, under the heading "ARRESTEE'S SIGNATURE." One line is provided for the arrested person to sign acknowledging that he has been arrested and "advised of all the above rights and consequences." The other two additional lines allow for identification of "WITNESSES" and "ARRESTING OFFICER(S)," respectively.[5] A section entitled *1040 "CERTIFICATION OF REFUSAL TO SIGN," used when the arrested person refuses to sign the form, appears directly underneath the three lines contained in the ARRESTEE'S SIGNATURE section.[6] It is below this section that the form contains the additional two sentences, which state, "The law enforcement officer may ask you to submit to more than one chemical test. If you refuse to submit to any test, your driver's license will be suspended."
In addition to the "ARRESTEE'S RIGHTS FORM" setting forth the driver's rights relating to chemical testing for intoxication required by La. R.S. 32:661C(1), the record also contains a copy of the "CERTIFICATION OF ARREST" form required under La. R.S. 32:666B. According to Trooper Louviere's certification, "Prior to being instructed to take the [chemical] test, the named person was read and advised of all the information on the Arrestee's Rights Form...." (Emphasis added.)
Bloom suggests that because the last two sentences of the arrestee's rights form appear below his signature acknowledging that he has been "advised of all the above rights and consequences," the form is deficient. But nothing in La. R.S. 32:661C requires that the arrested person's signature acknowledge that he was advised of all his rights and consequences. Rather, Subsection C mandates that a law enforcement officer shall read the DPSC-approved form to the person requested to submit to chemical testing; and that, after reading the form, the officer shall request that the arrested person sign the form. While a form which included an acknowledgement by the arrestee that he had been read the two sentences, advising him that he may be asked to submit to more than one test and that if he refuses to submit to any test his license will be suspended, would clearly establish that all the consequences of failing to submit to more than one test had been read to an arrestee, such an acknowledgement is not a mandated element of La. R.S. 32:661C.
Trooper Louviere and Bloom provided contradicting testimony as to whether the last two sentences were read to Bloom prior to administration of the breathalyzer. Nevertheless, when the DPSC-approved arrestee's-rights form read to Bloom is examined alongside the certification-of-arrest form required by La. R.S. 32:666B, the evidence clearly establishes that Bloom was read and advised of all the information on the form, including the last two sentences. Thus, because the record establishes that Bloom was duly informed of the consequences of his failure to submit to the urine test subsequent to his initial submission to the breathalyzer, the district court correctly affirmed the ALJ's upholding of the suspension of Bloom's driver's license.
IMPOSITION OF INSTALLATION OF IGNITION INTERLOCK DEVICE
Citing La. R.S. 32:6671, Bloom contends that the district court erred by requiring that he have an ignition interlock device installed in his vehicle. But Subsection I is directed to the installation of an ignition interlock device as a condition of the reinstatement of such person's driver's license. Although, as we have already noted, Bloom's driving privileges have been reinstated, it is not in connection with that reinstatement that Bloom challenges imposition of the ignition interlock installation. Instead, he suggests that the installation of the device as a condition of his eligibility *1041 for a restricted, hardship license was error by the district court.[7]
La. R.S. 32:668C(1) provides that in its review of the final order of suspension or denial by DPSC, the district court may exercise any action it deems necessary under the law. Therefore, we review whether the district court correctly deemed that the installation of the ignition interlock device (as a condition of the issuance of a restricted, hardship license) was a necessary action in the suspension of Bloom's driver's license.
An ignition interlock device is "a constant monitoring device that prevents a motor vehicle from being started at any time without first determining the equivalent blood alcohol level of the operator through the taking of a breath sample for testing." See La. R.S. 15:307. Bloom's breath was chemically tested and yielded 0.000 grams percent blood alcohol concentration. Therefore, the record establishes that Bloom was under no impairment as a result of alcohol intoxication and fails to show any connection between Bloom's refusal to subsequently submit a specimen of urine for chemical testing and the imposition of the installation of an ignition interlock device used to monitor a driver's blood alcohol level. Thus, the action was not a necessary one under La. R.S. 32:668C(1), and the district court erred in deeming that the imposition of the installation of an ignition interlock device as a condition of eligibility of issuance of a restricted, hardship license was a necessary action. Accordingly, that portion of the judgment is vacated.
VIABILITY OF CLAIM OF UNCONSTITUTIONALITY OF LOUISIANA'S IMPLIED CONSENT LAW
Bloom asserts that under Louisiana's Implied Consent Law, he was not required to provide a urine specimen until Trooper Louviere first obtained a search warrant, citing Birchfield v. North Dakota, --- U.S. ----, 136 S.Ct. 2160, 195 L.Ed.2d 560 (2016), which held that a warrantless request for a blood specimen for chemical testing violated the Fourth Amendment; and State of Minnesota v. Thompson, 886 N.W.2d 224, 233-34 (Mn. Sp. Ct. 2016), in which the Minnesota State Supreme Court held that conducting a blood or urine test without a warrant violated the Fourth Amendment. Bloom urges that applying the same rationale to his case results in the conclusion that Louisiana's Implied Consent Law violates the Fourth Amendment and, therefore, is unconstitutional as applied to him.
The record shows that in filing his petition for judicial review, Bloom did not seek declaratory relief or otherwise raise any allegations pleading the unconstitutionality of La. R.S. 32:661 et seq. , as applied to him. Bloom first claimed that the suspension of his driver's license was unconstitutional at the hearing in district court in his opening and closing arguments, contending that Trooper Louviere was required to obtain a search warrant before he could request that Bloom submit to a chemical test of his urine.[8]
In order to successfully challenge the constitutionality of a statute, the party *1042 attacking the statute has a three-tier burden. First, the plea of unconstitutionality must be made in the district court. Next, the plea of unconstitutionality must be specially pleaded. Finally, the grounds outlining the basis of unconstitutionality must be particularized. Williams v. State, Dep't of Health & Hosps., 95-0713 (La. 1/26/96), 671 So.2d 899, 901-02 ; See e.g., Carver v. Louisiana Dep't of Pub. Safety, 2017-1340 (La. 1/30/18), 239 So.3d 226, 227-28 (in conjunction with petition for judicial review, petitioner filed a motion for declaratory judgment in district court, seeking to have specified provisions of Louisiana's Implied Consent Law declared unconstitutional).
The pleadings allowed in civil actions are petitions, exceptions, written motions, and answers. La. C.C.P. art. 852. When a claim of the unconstitutionality of a statute is specifically plead, the claim must be raised in a petition, an exception, a motion, or an answer. It cannot be raised in a memorandum, opposition, or brief as those documents do not constitute pleadings. Williams, 671 So.2d at 902 (relying on Vallo v. Gayle Oil Co., Inc., 94-1238 (La. 11/30/94), 646 So.2d 859, 865 ). Litigants should be afforded sufficient time to brief and prepare arguments regarding whether a statute is unconstitutional to avoid unfair prejudice to the parties. Additionally, a contradictory hearing should be held wherein both sides are given an opportunity to brief and argue the issue. See Williams, 671 So.2d at 902.
Asserting the unconstitutionality of Louisiana's Implied Consent Law as applied to him during opening and closing arguments at the trial of his petition for judicial review without raising the claim in a pleading is insufficient, particularly since DPSC has not been afforded an opportunity to brief and argue the issue. See Williams, 671 So.2d at 902 (where the state agency was provided formal notice of intent to attack a statute, failed to raise any objection, and did not request a delay in the proceedings to argue and brief the issue, because the claim was not asserted in a formal pleading, the trial court's declaration of unconstitutionality was vacated). In the interest of justice, the matter is remanded to the district court for further proceedings on the issue of the constitutionality of Louisiana's Implied Consent Law as applied to Bloom. See La. C.C.P. art. 2164 ; Vallo, 646 So.2d at 866.
DECREE
For these reasons, that portion of the judgment which suspends Bloom's driving privileges is affirmed; that portion of judgment which conditions eligibility of a restricted, hardship license on the installation of an ignition interlock device is vacated; the matter is remanded to the district court to allow Bloom to assert the claim that the Implied Consent Law is unconstitutional as applied to him. Appeal costs in the amount of $1,006.50 are assessed one-half to plaintiff-appellant, William T. Bloom and one-half to defendant-appellee, State of Louisiana, Department of Public Safety and Corrections, Office of Motor Vehicles.
MOTION TO STRIKE DENIED; JUDGMENT AFFIRMED IN PART AND VACATED IN PART; REMANDED.
Whipple, C.J. dissents in part & concurs in part for reasons assigned.
I respectfully disagree with the majority opinion insofar as it affirms that part of the district court judgment which suspends Bloom's driving privileges. Subsection A(1) of LSA-R.S. 32:666 provides that when a *1043 law enforcement officer has probable cause to believe that a person has violated a law that prohibits operating a vehicle while intoxicated, that person may not refuse to submit to a chemical test or tests if he has refused to submit to such test or tests on two previous and separate occasions of any previous such violation or in any case wherein a fatality has occurred or a person has sustained serious bodily injury in a crash involving a motor vehicle. A refusal of any such test or tests under these enumerated circumstances shall result in the suspension of driving privileges. In contrast, Subsection A(2) of LSA-R.S. 32:666 provides that in all cases other than those set forth in Subsection A(l), a person may refuse to submit to a chemical test or tests, after being advised of the consequences of such refusal as provided for in Subsection 661C, and his license shall be seized under the circumstances provided in Section 667. Thereafter, the person has 30 days to request an administrative hearing. See LSA-R.S. 32:667.
The Arrestee's Rights Form signed by Bloom, which sets forth the arrestee's rights relating to the chemical test for intoxication and is the standardized form approved by DPSC in accordance with LSA-R.S. 32:661C(1), states as follows:
These are the CONSEQUENCES OF REFUSAL TO THE CHEMICAL TEST. YOU HAVE THE RIGHT TO REFUSE THE CHEMICAL TEST IF YOU WERE NOT INVOLVED IN A CRASH WHERE A FATALITY OR SERIOUS INJURY OCCURRED:
1. Your driving privileges shall be suspended for a period of one year if this is your first refusal....
(Emphasis added.)
The form signed by Bloom incorrectly informed him that his license "shall be suspended for a period of one year." Bloom has not refused to submit to one or more tests on two previous and separate occasions, nor was he in an accident involving a fatality or serious bodily injury. See LSA-R.S. 32:666(A)(1). Thus, his refusal is governed by Subsection A(2) of LSA-R.S. 32:666. As stated above, Subsection A(2) of LSA-R.S. 32:666 neither mandates a suspension nor articulates the duration of any suspension; rather, this subsection provides that a driver's license may be seized and the driver may thereafter request an administrative hearing.
Moreover, the form signed by Bloom continuously refers to a driver's refusal to submit to a chemical test in the singular form. As discussed by the majority, the form's only reference to multiple chemical tests are the two sentences below Bloom's signature line, wherein he attests that he has been arrested and "advised of all the above rights and consequences." (Emphasis added.) Given the placement of these critically relevant sentences below Bloom's signature line, the form's continuous reference to a singular chemical test above this signature line, and, most importantly, the form's actual misstatement of the consequences of Bloom's refusal, I am constrained to find that Bloom was not adequately informed regarding the consequences of his failure to submit to the urine test. See Schexnaydre v. State, Department of Public Safety and Corrections, 2011-1420 (La. app. 1st Cir. 11/2/12), 111 So.3d 345, 351. In sum, on the record before us, the DPSC's suspension of Bloom's driving privileges was invalid (and has a significant impact on Bloom's ability to retain his license to work as a pilot). Accordingly, I would reverse that portion of the district court judgment suspending his driving privileges.
However, because the majority herein has voted to affirm the suspension of Bloom's driving privileges, I concur with the majority opinion insofar as it vacates *1044 that portion of the judgment which conditions Bloom's eligibility of a restricted, hardship license on the installation of an ignition interlock devise, and remands the matter to the district court to allow Bloom to assert his claim that the Implied Consent Law is unconstitutional as applied to him.
For the foregoing reasons, I respectfully concur in part and dissent in part.

Bloom filed a motion to strike DPSC's brief as a sanction for untimeliness. Striking a brief is a harsh remedy. See American General Fire & Cas. Co. v. Louisiana Worker's Comp. Second Injury Bd., 604 So.2d 46, 48 (La. App. 1st Cir.), writ denied, 608 So.2d 176 (La. 1992). Mindful that appellee's brief allows the court to have before it both sides of the issues raised in the appeal, see Rader v. Dep't of Health & Hosps., Ofc. of Pub. Health, Engineering Servs., 1994-0763 (La. App. 1st Cir. 3/3/95), 652 So.2d 644, 645-46, we deny the motion.

Bloom testified that at his mother's request, he traveled to Baton Rouge from Tallahassee, Florida, where he worked as a private pilot, to see his father who had health issues. With only about 4-1/2 hours of sleep, the following morning, Bloom made the journey west, arriving in Baton Rouge around 2 p.m. on September 5, 2015. He visited with his family, ate a meal, and then began the journey back to Tallahassee, already feeling tired. He admitted that he was sleepy and swerved twice. After the second time, he exited the interstate at Robert hoping to find a hotel.

See generally La. R.S. 14:98.

In brief, Bloom states that the Tangipahoa District Attorney's Office entered a nolle prosequi of the DWI charges on February 13, 2017, and DPSC acknowledges that Bloom's driving privileges were statutorily reinstated on February 20, 2017.

Trooper Louviere is written in as "WITNESSES" and his name is written in longhand above "ARRESTING OFFICER(S)."

See La. R.S. 32:661C(2).

The order of the installation of an ignition interlock device for a restricted, hardship driver's license ostensibly affects the viability of Bloom's commercial pilot's license issued by the Federal Aviation Association. See generally 14 C.F.R. 61.15, requiring a person holding a commercial pilot certificate under 14 C.F.R. 61.5(a)(v) to provide a written report of the cancellation, suspension, or revocation of his or her license to operate a motor vehicle.

The record establishes that Bloom provided copies of Birchfield and Thompson to the district court and opposing counsel at the close of the hearing.