PETTIGREW, J.
| ?The State of Louisiana, through the Department of Public Safety and Corrections, Office of Motor Vehicles (“OMV”), seeks review of a district court judgment ordering it to reinstate Randy Schexnay-dre’s driver’s license. For the reasons that follow, we affirm the district court’s judgment.
FACTS AND PROCEDURAL HISTORY
On May 15, 2010, Louisiana State Troopers Jeremy Price and Huey Galmiche observed plaintiff, Randy Schexnaydre, asleep at the wheel of his vehicle, with his foot on the brake, at the intersection of U.S. 11 and Interstate 12. The troopers woke Mr. Schexnaydre and asked him to step out of the vehicle. Trooper Price noticed Mr. Schexnaydre displaying signs of impairment, including bloodshot eyes, unsteady balance, and shaking. Trooper Price asked Mr. Schexnaydre if he was currently taking prescription medication, to which Mr. Schexnaydre responded that he was taking Methadone.
Mr. Schexnaydre consented and submitted to the “Standardized Field Sobriety Test” (“SFST”), which was administered by Trooper Price in accordance with La. R.S. 32:661. Trooper Price determined that Mr. Schexnaydre failed the SFST and arrested him for operating a vehicle while intoxicated, in violation of La. R.S. 14:98, and for simple obstruction of a highway of commerce, in violation of La. R.S. 14:97.
Mr. Schexnaydre was transported to the Slidell Police Department, where Trooper Price advised him of his constitutional right to refuse chemical testing and of the consequences of failing to submit to the testing, including suspension of his driver’s license, as required by La. R.S. 32:661(C). Mr. Schexnaydre indicated that he understood his rights by signing the “Arrestee’s Rights Form.” He submitted a breath sample to test for chemical intoxication. Mr. Schexnaydre’s breath sample registered a blood alcohol content of 0.000 grams percent on the Intoxilyzer 5000.
Subsequently, Trooper Price requested that Mr. Schexnaydre submit a urine sample to test for abused substances and/or controlled dangerous substances. In response, Mr. Schexnaydre asked whether he had an option to refuse the test and whether he would be required to pay for the test. Trooper Price “advised [Mr. IsSchexnaydre] if he wanted to take the [urine] test, he could take it, that was up to him.” Trooper Price, however, did not advise Mr. Schexnaydre that his license would be revoked for failure to submit to the urine test. Thereafter, Trooper Price testified that Mr. Schexnaydre advised that “if it’s my right to refuse, then I’m going to refuse.” As a-result of his refusal to submit the requested urine sample, the OMV subsequently suspended Mr. Schex-naydre’s Class D driver’s license for a period of 365 days in accordance with La. R.S. 32:667(B)(2)(a).
Pursuant to La. R.S. 32:667, Mr. Schex-naydre timely requested an administrative hearing to contest the suspension of his license for refusal to submit to a chemical test for intoxication. On January 20, 2011, the administrative law judge affirmed the suspension.
On February 8, 2011, Mr. Schexnaydre filed a petition for judicial review with the district court.[1] See La. R.S. 32:668(C). *348 Following a hearing on March 22, 2011, the district court ordered the OMV to reinstate Mr. Schexnaydre’s driving privileges.
The OMV has appealed the district court’s judgment. The OMV contends that although Mr. Schexnaydre voluntarily submitted to the breath test, he was subject to a mandatory suspension of his driving privileges for refusing to submit to the urine test.
DISCUSSION
On review of the administrative suspension of a driver’s license pursuant to the implied consent law, the district court is required to conduct a trial de novo to determine the propriety of the suspension. Millen v. State Dept. of Public Safety and Corrections, 2007-0845, p. 5 (La.App. 1 Cir. 12/21/07), 978 So.2d 957, 961. Such a trial is a civil action amenable to all of the ordinary rules of procedure and proof. Further, the fact that this is an action for judicial review of a decision resulting from an administrative hearing does not change the burden of proof placed by law on the plaintiff. Millen, 2007-0845 at 6, 978 So.2d at 961.
Louisiana Revised Statutes 32:661(A)(1) provides, in pertinent part, as follows:
Any person ... who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent ... to a |4chemical test or tests of his blood, breath, urine, or other bodily substance for the purpose of determining the alcoholic content of his blood, and the presence of any abused substance or controlled dangerous substance ....
Louisiana Revised Statutes 32:661(A)(2)(a) sets forth the following parameters for testing:
The test or tests shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person, regardless of age, to have been driving or in actual physical control of a motor vehicle upon the public highways of this state while under the influence of either alcoholic beverages or any abused substance or controlled dangerous substance as set forth in R.S. 40:964. The law enforcement agency by which such officer is employed shall designate in writing and under what conditions which of the aforesaid tests shall be administered.
See also Butler v. Department of Public Safety and Comctions, 609 So.2d 790, 792 (La.1992) (“all licensed drivers on state highways ... have impliedly consented to any number of tests to determine intoxication.”)
Louisiana Revised Statutes 32:661(C) provides as follows with regard to the procedure for informing an arrested person of his rights concerning testing:
(1) When a law enforcement officer requests that a person submit to a chemical test as provided for above, he shall first read to the person a standardized form approved by the Department of Public Safety and Corrections. The department is authorized to use such language in the form as it, in its sole discretion, deems proper, provided that the form does inform the person of the following:
(a) His constitutional rights under Miranda v. Arizona.
(b) That his driving privileges can be suspended for refusing to submit to the chemical test.
(c) That his driving privileges can be suspended if he submits to the chemical *349 test and such test results show a blood alcohol level of 0.08 percent or above or, if he is under the age of twenty-one years, a blood alcohol level of 0.02 percent or above.
(d) That his driving privileges can be suspended if he submits to the chemical test and the test results show a positive reading indicating the presence of any controlled dangerous substance listed in R.S. 40:964.
(e) The name and employing agency of all law enforcement officers involved in the stop, detention, investigation, or arrest of the person.
(f) That refusal to submit to a chemical test after an arrest for an offense of driving while intoxicated if he has refused to submit to such test on two previous and separate occasions of any previous such violation is a crime under the provisions of R.S. 14:98.2 and the penalties for such crime are the same as the penalties for first conviction of driving while intoxicated.
|⅞(2) In addition, the arresting officer shall, after reading said form, request the arrested person to sign the form. If the person is unable or unwilling to sign, the officer shall certify that the arrestee was advised of the information contained in the form and that the person was unable to sign or refused to sign.
“In each instance that a person submits or refuses to submit to a chemical test, after being advised of the consequences of such refusal or submission as provided for in R.S. 32:661(C), the officer shall submit a report in a form approved by the secretary,” which requires the officer to certify, among other things, that “he had followed the procedure in informing such person of his rights under R.S. 32:661(C), and that such person had submitted to the test or refused to submit to the test upon the request of the officer.” La. R.S. 32:666(B). Louisiana Revised Statutes 32:667 provides for the seizure of a person’s driver’s license and the suspension of his driving privileges if he “refuses to submit to an approved chemical test for intoxication” when the grounds set forth in La. R.S. 32:667 exist. La. R.S. 32:667(A) & (B).
On appeal, the OMV contends that Mr. Schexnaydre is subject to a mandatory suspension of his driving privileges based on his refusal to submit to a chemical test for intoxication. The OMV notes that Trooper Price arrested Mr. Schexnaydre for driving while intoxicated pursuant to La. R.S. 14:98. Trooper Price advised Mr. Schexnaydre of his rights, including reading the standardized “Rights Relating to the Chemical Test for Intoxication” form to Mr. Schexnaydre. Thereafter, Mr. Schexnaydre signed the rights form acknowledging that he understood his rights.
The OMV avers that although Mr. Schexnaydre submitted to the breath test, he refused to submit to the urine test. The OMV contends that the language in La. R.S. 32:661 is clear that, by the use of the phrase “test or tests,” a person suspected of operating a vehicle while under the influence of alcoholic beverages or abused/controlled dangerous substances can be subject to more than one chemical test. The OMV concludes that submission to and passing of a breathalyzer test should not give a motor vehicle operator the right to refuse, without consequences, additional tests for abused or controlled dangerous substances.
| ^Louisiana Revised Statutes 32:661 authorizes law enforcement officers to administer multiple tests to determine whether a driver is under the influence of alcoholic beverages, abused substances, and/or controlled dangerous substances. As noted by the OMV, law enforcement officers are faced with situations where a *350 motorist may have consumed alcoholic beverages and/or drugs. Although the investigating officer has authority to use multiple tests, the driver must be informed of the consequences of his failure to submit to the tests. See State v. Edwards, 525 So.2d 308, 313 (La.App. 1 Cir.1988).
We recognize that it is within the discretion of the investigating officer to select the appropriate test or tests to determine the source of impairment.[2] However, we further note that La. R.S. 32:661(0(1) clearly mandates, by the use of the word shall, that when a law enforcement officer requests that a person submit to a chemical test, he shall first read to the person a standardized form approved by the Department, which informs that person of his rights. As stated by the Louisiana Supreme Court in State v. Alcazar, 2000-0536, p. 8 (La.5/15/01), 784 So.2d 1276, 1281, “We find that any holding which allows the test results to be admitted into evidence when a defendant has not first been advised that he had a right to refuse to the test, effectively renders [La. R.S.] 32:661(0(1) and 32:666(A) meaningless.”
Prior to the breathalyzer test being administered, Trooper Price read the approved form, which included all the requirements set forth in La. R.S. 32:661(0(1), to Mr. Schexnaydre. Although the Department’s form properly advises a driver of the consequences arising from his failure to submit to the first chemical test sought to be administered, the form is ambiguous and contains inherent contradictions if utilized to administer subsequent tests, insofar as the form continually references a singular test. While the introductory paragraph of the form provides that the driver may be required “to submit to a chemical test or tests,” the remainder of the one page form references “the chemical test” a number of times and the consequences for failure to submit to “the chemical test.” Specifically, it indicates that if the driver “refuse[s] the chemical |7test,” his driving privileges “shall be suspended for ... one year if this is [his] first refusal.” Mr. Schexnaydre also notes that the only other test referenced on the form is one the driver can choose to take “at [his] own expense, if [he] so desire[s].”
Mr. Schexnaydre avers that his understanding of the form only required him to submit to “the test” or face suspension of his license. He notes that he submitted to the breathalyzer chemical test, and the results of that test were negative. Mr. Schexnaydre, apparently confused due to the ambiguity in the form, asked Trooper Price whether he had an option to take the urine test and whether he would be required to pay for the test. Although Trooper Price informed Mr. Schexnaydre that taking the test “was up to him,” Trooper Price did not advise Mr. Schex-naydre that his license would be revoked for failure to submit to the urine test or who would bear the cost of the additional test.[3]
*351 In Swan v. Department of Public Safety, 311 So.2d 498 (La.App. 4 Cir.1975), officers instructed the offending driver of his right to counsel pursuant to Miranda v. Arizona, but did not make it clear that the right to counsel had no application under the implied consent statute. In affirming a district court’s judgment enjoining and prohibiting the Department of Public Safety from suspending the driver’s license because the driver refused to submit to a chemical test prior to speaking to his lawyer, the fourth circuit, after noting inherent contradictions in the form utilized by the officers, reasoned:
Here it appears that the commingling of the information concerning the demands of the implied consent statute with the Miranda warnings resulted in [the driver] asserting a right he had earlier been told he was free to assert.
| ^Apparently [the driver] misconceived the warning and thought he was entitled to consult an attorney. [The driver’s] request came after he had first been told by Officer Heavey without qualification that he had a right to consult an attorney. Either Officer Heavey or Ortiz should have then elaborated by stating the right to counsel was inapplicable to the blood alcohol test, but applied only to the criminal charge of driving while intoxicated. Under such circumstance [sic] [the driver] is not deemed to have refused to submit to a chemical test within contemplation of [La. R.S.] 32:661 et seq.
Swan, 311 So.2d at 500. Additionally, “so as to prevent any confusion concerning a defendant’s rights,” this court has recognized that “[a] defendant is entitled to certain warnings clarifying that he has no constitutional right to refuse to submit to such a test.” Edwards, 525 So.2d at 313 n. 5.
Under these circumstances, due to the ambiguity in the form, coupled with Trooper Price’s response to Mr. Schexnaydre’s inquiry regarding his right to refuse the urine test, we conclude that Mr. Schexnay-dre was not adequately informed regarding the consequences from his failure to submit to the urine test. Accordingly, the district court did not err in ordering the OMV to reinstate Mr. Schexnaydre’s license.
DECREE
For the above and foregoing reasons, we affirm the district court’s judgment and assess appeal costs in the amount of $503.40 against the OMV.
AFFIRMED.
McCLENDON, J., dissents and assigns reasons.
WELCH, J., dissents for reasons assigned by McCLENDON, J.

. On February 16, 2011, the district court rendered an ex-parte temporary restraining order preventing the OMV from enforcing the *348 suspension of Mr. Schexnaydre’s driver’s license.

. The OMV avers that the breathalyzer is the least invasive test, but notes that the breathalyzer does not determine if a driver is under the influence of an abused or controlled dangerous substance.

. Moreover, Mr. Schexnaydre avers that the "Certification of Arrest” form, a separate form forwarded to the OMV, did not comply with La. R.S. 32:666(B), insofar as the statute requires a separate report be made "[i]n each instance” of test administration or "[i]n each instance” of test refusal. Mr. Schexnaydre notes that in this instance, only one "Certificate of Arrest” form was utilized. He also avers that because only one "Certificate of Arrest” form was used, the form itself is ambiguous. The executed form reflects that Mr. Schexnaydre submitted to and passed the chemical test and it includes only one blank *351 for test results, which reflects a 0.00 reading from the breathalyzer test and makes no reference to the "refused” test. However, the form also acknowledges Mr. Schexnaydre’s receipt of a temporary license the arresting officer’s seizure of Mr. Schexnaydre’s license, and Mr. Schexnaydre’s receipt of his notice of rights to have a hearing and the requirements thereto (all apparently arising from Mr. Schexnaydre’s failure to submit to the urine test). Mr. Schexnaydre concludes that had separate forms been utilized as required by La. R.S. 32:666(B), there would have been no such ambiguity or internal inconsistency in the form.