DRAKE, J.
| gPIaintiff/Appellant, Gina M. Stoltz, seeks review of a district court judgment that affirmed the suspension of her driver’s license. For the reasons that follow, we reverse the judgment of the district court.

FACTS AND PROCEDURAL HISTORY

On November 1, 2012, St. Tammany Parish Sheriffs Deputy Jay Quinn observed a vehicle driven by the plaintiffiap-pellant, Gina M. Stoltz, run a red light and nearly strike another vehicle at Harrison Avenue and Highway 190 in Covington, Louisiana. After stopping Mrs. Stoltz, Deputy Quinn detected a strong odor of alcoholic beverages on her breath and observed her slurred speech and poor balance.[1] Mrs. Stoltz admitted to drinking several alcoholic beverages prior to driving *1133 her vehicle. Mrs. Stoltz refused to submit to the Standardized Field Sobriety Test (SFST). See La. R.S. 32:661. Deputy Quinn then arrested Mrs. Stoltz for driving while intoxicated, in violation of La. R.S. 14:98, and proceeded to transfer her to a Louisiana State Police substation, Troop L, for further chemical testing.
When Deputy Quinn arrived at Troop L, he advised Mrs. Stoltz that she had been transferred there for chemical testing. Mrs. Stoltz refused to exit the vehicle and refused to submit to any chemical testing. Deputy Quinn did not advise Mrs. Stoltz of her constitutional right to refuse to chemical testing and of the consequences of failing to submit to the testing, including suspension of her driver’s license, as required by La. R.S. 32:661(C). At this point, Deputy Quinn called his supervisor over the radio requesting backup, since Mrs. Stoltz refused to exit the patrol unit. Deputy Quinn’s supervisor heard Mrs. Stoltz being combative over the radio and instructed Deputy Quinn to transfer Mrs. Stoltz to the St. | ¡¡Tammany Parish jail.[2] As a result of her refusal to submit to chemical testing, the State of Louisiana, through the Department of Public Safety and Corrections, Office of Motor Vehicles, suspended Mrs. Stoltz’s Class D driver’s license for a period of one year in accordance with La. R.S. 32:667(B)(2)(a).
Pursuant to La. R.S. 32:667, Mrs. Stoltz timely requested an administrative hearing to contest the suspension of her license for refusal to submit to a chemical test for intoxication. On March 13, 2013, the administrative law judge affirmed the suspension. See La. R.S. 32:668.
On April 12, 2013, Mrs. Stoltz filed a petition for judicial review with the district court. See La. R.S. 32:668(C). Following a trial de novo on July 15, 2013, the district court affirmed the suspension of Mrs. Stoltz’s driving privileges in a judgment signed on October 29, 2013.
Mrs. Stoltz has appealed the district court’s judgment. She contends that the State had no authority to suspend her driving privileges when the Sheriffs deputy failed to inform her of her constitutional right to refuse to chemical testing and of the consequences of failing to submit to testing, including the suspension of her driving privileges, thereby violating the mandatory minimum due process requirements imposed by Louisiana’s implied consent law.

LAW AND DISCUSSION

On review of the administrative suspension of a driver’s license pursuant to the implied consent law, the district court is required to conduct a trial de novo to determine the propriety of the suspension. Such a trial is a civil action amenable to all of the ordinary rules of procedure and proof. Further, the fact that this is an action for judicial review of a decision resulting from an administrative hearing does not change the burden of proof placed by law on the plaintiff. Schexnaydre v. State, Dept. of Public Safety and Corrections, 11-1420 (La.App. 1 Cir. 11/2/12), 111 So.3d 345, 348.
Louisiana Revised Statutes 32:661(A)(1) provides, in pertinent part, as follows:
Any person ... who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent ... to a chemical test or tests of his blood, breath, urine, or other bodily substance for the purpose of determining the alcoholic content of his blood, *1134 and the presence of any abused substance or controlled dangerous substance ... in his blood if arrested for any offense arising out of acts alleged to have been committed while the person was driving or in actual physical control of a motor vehicle while believed to be under the influence of alcoholic beverages or any abused substance or controlled dangerous substance ...
Louisiana Revised Statutes 32:661(A)(2)(a) sets forth the following parameters for testing:
The test or tests shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person, regardless of age, to have been driving or in actual physical control of a motor vehicle upon the public highways of this state while under the influence of either alcoholic beverages or any abused substance or controlled dangerous substance as set forth in R.S. 40:964. The law enforcement agency by which such officer is employed shall designate in writing and under what conditions which of the aforesaid tests shall be administered.
See also Butler v. Department of Public Safety and Corrections, 609 So.2d 790, 792 (La.1992) (“all licensed drivers on state highways ... have impliedly consented to any number of tests to determine intoxication”).
Louisiana Revised Statutes 32:661(C) provides as follows with regard to the procedure for informing an arrested person of his rights concerning testing:
(1) When a law enforcement officer requests that a person submit to a chemical test as provided for above, he shall first read to the person a standardized form approved by the Department of Public Safety and Corrections. The department is authorized to use such language in the form as it, in its sole discretion, deems proper, provided that the form does inform the person of the following:
(a) His constitutional rights under Miranda v. Arizona.
|fi(b) That his driving privileges can be suspended for refusing to submit to the chemical test.
(c) That his driving privileges can be suspended if he submits to the chemical test and such test results show a blood alcohol level of 0.08 percent or above or, if he is under the age of twenty-one years, a blood alcohol level of 0.02 percent or above.
(d) That his driving privileges can be suspended if he submits to the chemical test and the test results show a positive reading indicating the presence of any controlled dangerous substance listed in R.S. 40:964.
(e) The name and employing agency of all law enforcement officers involved in the stop, detention, investigation, or arrest of the person.
(f) That refusal to submit to a chemical test after an arrest for an offense of driving while intoxicated if he has refused to submit to such test on two previous and separate occasions of any previous such violation is a crime under the provisions of R.S. 14:98.2 and the penalties for such crime are the same as the penalties for first conviction of driving while intoxicated.
(2) In addition, the arresting officer shall, after reading said form, request the arrested person to sign the form. If the person is unable or unwilling to sign, the officer shall certify that the arrestee was advised of the information contained in the form and that the person was unable to sign or refused to sign.
“In each instance that a person submits or refuses to submit to a chemical test, after being advised of the consequences of such refusal or submission as provided for *1135 in R.S. 32:661(C), the officer shall submit a report in a form approved by the secretary.” La. R.S. 32:666(B). The officer shall certify, among other things, that “he had followed the procedure in informing such person of his rights under R.S. 32:661(C), and that such person had submitted to the test or refused to submit to the test upon the request of the officer.” Id. Louisiana Revised Statutes 32:667 provides for the seizure of a person’s driver’s license and the suspension of his driving privileges if he “refuses to submit to an approved chemical test for intoxication” when the grounds set forth in La. R.S. 32:667 exist. Schexnaydre, 111 So.3d at 349; see La. R.S. 32:667(A) & (B).
|fi0n appeal, Mrs. Stoltz contends that she is not subject to a mandatory suspension of her driving privileges based on her uninformed refusal to submit to a chemical test for intoxication. Mrs. Stoltz notes that Deputy Quinn arrested her for driving while intoxicated pursuant to La. R.S. 14:98. While Deputy Quinn advised Mrs. Stoltz of her Miranda[3] rights, he did not advise her of her constitutional right to refuse to chemical testing and of the consequences of failing to submit to the testing.[4] Deputy Quinn did not read the standardized “Rights Relating to the Chemical Test for Intoxication” form to Mrs. Stoltz. Mrs. Stoltz did not sign the rights form acknowledging that she understood her rights.
The State avers that, from the outset of the stop, Mrs. Stoltz exhibited combative behavior. She refused to be handcuffed. She kicked, screamed, and made threats against Deputy Quinn. At Troop L, she refused to exit the patrol vehicle and refused to submit to chemical testing. Deputy Quinn testified that he was unable to advise Mrs. Stoltz of her rights relating to the chemical test because of her combative behavior. Deputy Quinn testified that “it was almost impossible to speak” to Mrs. Stoltz and that she “didn’t want to answer any” of his questions, and that she refused to listen to him. Deputy Quinn testified that Mrs. Stoltz was transferred to jail for her own safety, as well as his own.
It is within the discretion of the investigating officer to select the appropriate test or tests to determine the source of impairment. However, we further note that La. R.S. 32:661(C)(1) clearly mandates, by the use of the word shall, that when a law enforcement officer requests that a person submit to a chemical test, he shall 17first read to the person a standardized form approved by the Department, which informs that person of his rights. As stated by the Louisiana Supreme Court in State v. Alcazar, 00-0536 (La.5/15/01), 784 So.2d 1276, 1281, “[w]e find that any holding which allows the test results to be admitted into evidence when a defendant has not first been advised that he had a right to refuse to the test, effectively renders [La. R.S.] 32:661(0(1) and 32:666(A) meaningless.” Schexnaydre, 111 So.3d at 350.
At trial, Deputy Quinn confirmed that although he could not have brought Mrs. Stoltz into Troop L to advise her of her rights relating to chemical testing, he *1136 could have read her the rights form while she was sitting in the rear of his patrol vehicle, despite her combative behavior and whether or not she was actually listening. Under these circumstances, we conclude that Mrs. Stoltz, regardless of her behavior the night of her arrest, was not adequately informed regarding the consequences of her failure to submit to chemical testing. Accordingly, the district court erred in affirming the suspension of her driver’s license.

DECREE

Considering the foregoing, the judgment of the district court is reversed. The State of Louisiana, through the Department of Public Safety and Corrections, Office of Motor Vehicles, is hereby ordered to reinstate Gina M. Stoltz’s driver’s license. , All costs of this appeal, in the amount of $ 210.00, are cast to the State of Louisiana, through the Department of Public Safety and Corrections, Office of Motor Vehicles.
REVERSED.

. Deputy Vaughn Vargo and Deputy Dustin Stevens were also present during the stop; however, these deputies arrived as backup after Deputy Quinn stopped Mrs. Stoltz and did not participate directly in her arrest.

. Deputy Quinn testified that Mrs. Stoltz was being extremely combative during and after her arrest. She refused to be handcuffed. Once inside the rear of Deputy Quinn’s patrol unit, Mrs. Stoltz lay on her back and attempted to kick out the window of his patrol unit. She was also screaming and making threats against Deputy Quinn.

. Prior to any questioning, a person must be warned that she has the right to remain silent, that any statement she does make may be used as evidence against her, and that she has a right to the presence of an attorney, either retained or appointed. The person may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly, and intelligently. Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

. Furthermore, Deputy Quinn did not make it clear that the right to counsel had no application under the implied consent law. See Schexnaydre, 111 So.3d at 351 (citing Swan v. Dep't of Pub. Safety, 311 So.2d 498, 500 (La.App. 4 Cir. 1975)).