STONE, J.
The State of Louisiana, through the Department of Public Safety and Corrections, Office of Motor Vehicles, seeks review of the trial court's judgment reinstating Brian M. Litton's commercial driver's license. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
On July 13, 2015, Brian M. Litton ("Litton") was arrested by Bossier Parish Sheriff's Deputy Tim Wooten ("Deputy Wooten") for operating a vehicle while intoxicated, first offense, in violation of La. R.S. 14:98.[1] Litton was transported to the Bossier Parish Maximum Security Facility and presented with the standard arrestee's rights form related to chemical tests for intoxication. In accordance with La. R.S. 32:661(C), the rights form is used to notify the arrestee of his or her constitutional right to refuse chemical testing and of the consequences of failing to submit to chemical testing, including but not limited to suspension of driving privileges. Litton subsequently signed the rights form.
Thereafter, Deputy Wooten requested Litton submit to a chemical test using a breathalyzer machine, and Litton refused to submit to the test. At the time, Litton held a Class "A" commercial driver's license, which permitted him to operate all commercial and noncommercial vehicles within all classes. As a consequence of his refusal to submit to the chemical test, the State of Louisiana, through the Department of Public Safety and Corrections, Office of Motor Vehicles ("the Department"), disqualified Litton's commercial driver's license for one year. See La. R.S. 32:667(B)(2)(a) and La. R.S. 32:414.2(A)(4)(d).
Pursuant to La. R.S. 32:667(A)(2), Litton requested an administrative hearing to challenge the suspension of his driving privileges. On December 30, 2015, the administrative law judge ("ALJ") found *1077 reasonable grounds existed for Deputy Wooten to suspect Litton was operating a vehicle while intoxicated. See La. R.S. 32:661(A)(2)(a). Resultantly, he affirmed the suspension of Litton's driving privileges for refusing to submit to the chemical test.
On January 25, 2017, Litton filed a petition for judicial review of the ALJ's decision. See La. R.S. 32:668(C)(1). Following a trial de novo , the trial court rendered judgment reinstating Litton's commercial driver's license because Deputy Wooten was unable to remember if he read the entire rights form to Litton, a requirement under La. R.S. 32:661(C). The trial court relied on Litton's testimony that he was not advised of the provisions in the rights form related to the disqualification of his commercial driver's license. A final judgment was signed on February 21, 2017.[2] T he Department now appeals.
DISCUSSION
The Department argues the trial court erred in reinstating Litton's commercial driver's license. According to the Department, after Litton refused to submit to the chemical test, La. R.S. 32:414.2 required the disqualification of his commercial driver's license for a minimum of one year.
In order to promote safety on Louisiana highways, the Louisiana Legislature enacted the implied consent law, La. R.S. 32:661 et seq. , which addresses the testing of persons suspected of operating motor vehicles while under the influence of alcoholic beverages or controlled dangerous substances. State v. Alcazar , 2000-0536 (La. 05/15/01), 784 So.2d 1276, 1279.
La. R.S. 32:661(A)(1) provides, in pertinent part:
Any person ... who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent ... to a chemical test or tests of his blood, breath, urine, or other bodily substance for the purpose of determining the alcoholic content of his blood, and the presence of any abused substance or controlled dangerous substance ... in his blood if arrested for any offense arising out of acts alleged to have been committed while the person was driving or in actual physical control of a motor vehicle while believed to be under the influence of alcoholic beverages or any abused substance or controlled dangerous substance[.]
La. R.S. 32:661(A)(2)(a) sets forth the following parameters for testing:
The test or tests shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person, regardless of age, to have been driving or in actual physical control of a motor vehicle upon the public highways of this state while under the influence of either alcoholic beverages or any abused substance or controlled dangerous substance as set forth in R.S. 40:964. The law enforcement agency by which such officer is employed *1078 shall designate in writing and under what conditions which of the aforesaid tests shall be administered.
See also Butler v. Dep't of Pub. Safety & Corr. , 609 So.2d 790, 792 (La. 1992) ("all licensed drivers on state highways ... have impliedly consented to any number of tests to determine intoxication").
La. R.S. 32:661(C) provides the following procedure for informing an arrested person of his rights concerning chemical testing, with emphasis added:
(1) When a law enforcement officer requests that a person submit to a chemical test as provided for above, he shall first read to the person a standardized form approved by the Department of Public Safety and Corrections. The department is authorized to use such language in the form as it, in its sole discretion, deems proper, provided that the form does inform the person of the following:
(a) His constitutional rights under Miranda v. Arizona .
(b) That his driving privileges can be suspended for refusing to submit to the chemical test.
(c) That his driving privileges can be suspended if he submits to the chemical test and such test results show a blood alcohol level of 0.08 percent or above or, if he is under the age of twenty-one years, a blood alcohol level of 0.02 percent or above.
(d) That his driving privileges can be suspended if he submits to the chemical test and the test results show a positive reading indicating the presence of any controlled dangerous substance listed in R.S. 40:964.
(e) The name and employing agency of all law enforcement officers involved in the stop, detention, investigation, or arrest of the person.
(f) That refusal to submit to a chemical test after an arrest for an offense of driving while intoxicated if he has refused to submit to such test on two previous and separate occasions of any previous such violation is a crime under the provisions of R.S. 14:98.2 and the penalties for such crime are the same as the penalties for first conviction of driving while intoxicated.
(2) In addition, the arresting officer shall, after reading said form, request the arrested person to sign the form. If the person is unable or unwilling to sign, the officer shall certify that the arrestee was advised of the information contained in the form and that the person was unable to sign or refused to sign.
"In each instance that a person submits or refuses to submit to a chemical test, after being advised of the consequences of such refusal or submission as provided for in R.S. 32:661(C), the officer shall submit a report in a form approved by the secretary." La. R.S. 32:666(B). In the report, the officer shall certify, among other things, that "he had followed the procedure in informing such person of his rights under R.S. 32:661(C), and that such person had submitted to the test or refused to submit to the test upon the request of the officer." Id.; see Stoltz v. Dep't of Pub. Safety & Corr. , 2013-1968 (La. App. 1 Cir. 06/25/14), 147 So.3d 1131, 1134-35 ; Schexnaydre v. State, Dep't of Pub. Safety & Corr , 11-1420 (La. App. 1 Cir. 11/02/12), 111 So.3d 345, 349.
When a person is arrested for operating a vehicle while intoxicated and refuses to submit to an approved chemical test for the first time, La. R.S. 32:667 provides for the seizure of the person's driver's license and the suspension of his driving privileges for one year. See Stoltz, supra ; Schexnaydre, supra . Moreover, La. R.S. 32:414.2(A)(4) provides for the disqualification of a person's commercial driving privileges for a minimum of one year upon "a *1079 first offense of refusal to submit to an alcohol concentration or drug test, while operating a commercial motor vehicle or noncommercial motor vehicle by a commercial driver's license holder."
On review of the administrative suspension of a driver's license pursuant to the implied consent law, the district court is required to conduct a trial de novo to determine the propriety of the suspension. Such a trial is a civil action amenable to all of the ordinary rules of procedure and proof. Further, the fact that this is an action for judicial review of a decision resulting from an administrative hearing does not change the burden of proof placed by law on the plaintiff. Stoltz, supra at 1133 ; Schexnaydre, supra at 348 ; see La. R.S. 32:667(A) & (B).
Our review reveals the trial court did not err in reinstating Litton's commercial driver's license because the record does not indicate Deputy Wooten sufficiently complied with La. R.S. 32:661(C). The statute clearly mandates, by the use of the word shall , that when a law enforcement officer requests that a person submit to a chemical test, he shall first read to the person a standardized form approved by the Department, which informs that person of his rights. Stoltz, supra ; Schexnaydre, supra ; See La. R.S. 32:661(C)(1). As such, despite the Department's contrary argument, Litton voluntarily signing the rights form is not enough. At trial, Deputy Wooten testified he presented Litton with the rights form in accordance with La. R.S. 32:661(C) but could not remember if he read Litton the entire form; Litton testified he was not read the provisions of the rights form related to the disqualification of his commercial driver's license. Accordingly, the trial court's judgment reinstating Litton's commercial driver's license will not be disturbed on appeal.
CONCLUSION
For the foregoing reasons, the trial court's judgment reinstating Litton's commercial driver's license is affirmed. In accordance with La. R.S. 13:5112, costs of this appeal are assessed to the Department in the amount of $729.50.
AFFIRMED.

On December 30, 2015, Litton was tried on the charge of operating a vehicle while intoxicated, first offense, in violation of La. R.S. 14:98. He was found not guilty.

The Department argues the trial court erred in signing a judgment that was not circulated pursuant to Louisiana District Court Rule 9.5 ("Rule 9.5"). Rule 9.5 provides, in pertinent part, that a judgment submitted to a judge after its rendition must be circulated by the responsible attorney to counsel for all parties at least five working days before its presentation to the judge. This allows other parties the opportunity to comment upon the judgment's content. We find the trial court erred in signing a judgment without certification that Rule 9.5 had been followed. The instant record contains no evidence that Litton circulated a proposed judgment prior to submission to the trial court. Nonetheless, we consider the error harmless because the judgment conformed to the trial court's oral ruling and the relevant substantive law. See In re Interdiction of DeMarco , 2009-1791 (La. App. 1 Cir. 04/07/10), 38 So.3d 417, 424.