Judgment rendered January 15, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,208-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

BARRY L. JACOBS                                      Plaintiff-Appellant

versus

STATE OF LOUISIANA,                                  Defendant-Appellee
DEPARTMENT OF PUBLIC
SAFETY, LICENSE CONTROL
AND DRIVER IMPROVEMENT
DIVISION

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2017-3022

Honorable B. Scott Leehy, Judge

* * * * *

HUDSON, POTTS & BERNSTEIN, LLP          Counsel for Appellant
By:  G. Adam Cossey

LAURA C. HOPES                          Counsel for Appellee

* * * * *

Before MOORE, PITMAN, and STEPHENS, JJ.

**PITMAN, J.**

Plaintiff-Appellant Barry L. Jacobs appeals the trial court's ruling in favor of Defendant-Appellee the State of Louisiana, Department of Public Safety, License Control and Driver Improvement Division (the "Department"). For the following reasons, we reverse the judgment of the trial court and reinstate Jacobs's commercial driver's license.

## FACTS

On September 13, 2017, Jacobs filed a petition for judicial review. He stated that on the evening of March 10, 2017, he was driving on Highway 165 in Monroe and was pulled over by a Ouachita Parish Sheriff's Deputy. After a field sobriety test, he was transported to the Ouachita Correctional Center ("OCC") to take a chemical alcohol test. He attempted to provide two breath samples, but was unable to provide a satisfactory one. He was charged with DWI first offense, which was amended to reckless operation. He pled guilty to the amended charge, an associated speeding violation was dismissed and he was sentenced to a fine of $750 and costs. Pursuant to La. R.S. 32:666, his commercial driver's license was suspended for refusing to submit to a chemical alcohol test. He requested an administrative hearing, and the Department issued a ruling affirming the suspension of his license. He sought a review of this administrative suspension of his license and requested that the suspension be denied and that he be awarded all driving privileges.

On October 12, 2017, the Department filed an answer denying the allegations.

A trial was held on May 14, 2019. The Department called Lt. Paul Knight of the Ouachita Parish Sheriff's Office as a witness. Lt. Knight

testified that he was on duty on March 10, 2017; at 10:34 p.m., he stopped Jacobs's vehicle for traveling at a speed of 66 miles per hour in a 50 m.p.h. speed zone. While speaking to Jacobs, he noticed a smell of alcohol on his breath and asked him to step out of his vehicle. Jacobs stated that he drank alcohol with his dinner that night. Lt. Knight noticed that Jacobs was unsure of his balance and swayed a bit, so he administered a field sobriety test. At 10:47 p.m., he advised Jacobs that he was under arrest and seized his commercial driver's license. He then transported Jacobs to OCC and took him to the DWI interview room. He testified that he advised Jacobs of his rights regarding the chemical test for intoxication, and Jacobs refused to sign the rights form. He left the room for 21 minutes; and, when he returned, he offered Jacobs a chemical breath test to be conducted on the Intoxilyzer 9000 (the "Intoxilyzer").[1] He recalled that Jacobs hesitated at first, but then began the test by blowing into the tube of the Intoxilyzer. He explained that the Intoxilyzer displays a person's blood alcohol content as the person blows into the tube. He stated that when Jacobs saw his blood alcohol content increasing on the display as he blew into the tube, he stopped blowing and then would start blowing again once the number decreased. He stated that Jacobs did not provide a proper sample during the initial test, so it was registered as a refusal to submit to the test. At Jacobs's request, he attempted a second test, but he again stopped blowing into the Intoxilyzer when the number increased. Jacobs did not provide a proper sample during the second test, so it was also registered as a refusal to submit to the test. He

---

[1] Lt. Knight identified a certification card for the Intoxilyzer, which showed that it was certified as of January 11, 2016. He explained that the certification expires after two years, so the March 10, 2017 arrest date was within those two years.

then booked Jacobs into jail for DWI based on the refusal to submit to the chemical breath test.

On cross-examination, Lt. Knight testified that Jacobs was very cooperative during the traffic stop and field sobriety test. He did not preserve or retrieve any recording of Jacobs performing the chemical breath test. He agreed that although Jacobs's test results were registered as a refusal due to insufficient samples, he did blow into the Intoxilyzer. He opined that Jacobs was trying to beat the Intoxilyzer by watching the display of his blood alcohol content and ceasing to blow into the tube before his blood alcohol content was displayed at .08. He stated that he did have the option to administer a blood or urine test, but did not offer these options to Jacobs. He also explained that the rights form is on the online LADRIVE system, and he prints off the form from the system and has the person sign the rights form after he reads it. The person can either electronically sign the form or he can note on the form that the person refused to sign.

Jacobs testified on his own behalf. He stated that he is required to have a commercial driver's license for his job and that he had been able to keep his license pending the court's decision. He recalled that on March 10, 2017, he and his girlfriend were driving home from a restaurant when the traffic stop occurred. He told Lt. Knight that he had drinks at the restaurant and then cooperated with a field sobriety test. He stated that at the OCC he did the chemical breath test twice and that during the first test, the Intoxilyzer beeped around .07. He contended that he passed the test, but that Lt. Knight still thought he was intoxicated, so he did the test again with the same result. He stated that he asked Lt. Knight if he could do the test a third time because his livelihood depended on him having a commercial driver's

license, but Lt. Knight refused. He testified that he did not see the display of his blood alcohol content on the Intoxilyzer while he was performing the test. He demonstrated how he blew into the Intoxilyzer and noted that he had had breathing problems, including bronchitis, since he was a child. He further testified that he did not refuse the chemical breath test and did not purposefully give an insufficient sample. He did not sign the rights form presented to him by Lt. Knight because he was offended that after he had been cooperative, Lt. Knight still arrested him for DWI. Reviewing an exhibit of the tests, Jacobs agreed that his first test began at 11:17 p.m. and ended at 11:21 p.m., that the second test began at 11:27 p.m. and ended at 11:31 p.m. and that he refused to sign the rights form at 12:02:41 a.m. On cross-examination, he testified that he did not remember Lt. Knight reading him the rights form.

Counsel for both parties then provided arguments. The trial court raised questions about the timeline of events, specifically about when Lt. Knight read Jacobs the rights form. It noted that while it did not matter when Jacobs signed the form, it did matter that Lt. Knight read the rights to Jacobs prior to administering the chemical breath test. It pointed out that the exhibits showed that Lt. Knight read the rights form at 10:50 p.m. and that the first chemical breath test began at 11:17 p.m. After taking a recess to review Lt. Knight's testimony, it noted that Lt. Knight was emphatic that he advised Jacobs of his rights related to the chemical test for intoxication before the test was administered.

The trial court found by a preponderance of the evidence that all of the requirements had been met to support the revocation of Jacobs's commercial driver's license. It stated that Jacobs voluntarily submitted to the

4

chemical breath test, but that he stopped blowing into the Intoxilyzer based on the display of his blood alcohol content. It was not convinced that Jacobs had any type of infirmity on that night that would have prevented him from blowing into the Intoxilyzer and successfully completing the test.

On May 24, 2019, the trial court filed a judgment affirming the suspension and disqualification of Jacobs's commercial driving privileges.

Jacobs appeals.

## DISCUSSION

In his first assignment of error, Jacobs argues that the trial court committed manifest error when it concluded that the rights form required by La. R.S. 32:661(C) was read to him three minutes after his arrest and before the chemical breath test was administered. He notes that La. R.S. 32:661(C) requires that an officer advise the person of his rights regarding the test *before* the test is administered, but that the evidence establishes that Lt. Knight read the rights form to Jacobs *after* the chemical breath test. He explains that (1) the time-stamped, documentary evidence shows that the rights form was read 45 minutes after the test was administered; (2) it is physically impossible for the rights form to have been read to him at the OCC just three minutes after he was taken into custody on the shoulder of the highway; (3) he unequivocally testified that the rights form was not provided before the test; (4) the arresting deputy admittedly had very limited memory of the arrest; and (5) the arresting deputy was unfamiliar and admittedly violated DWI testing protocols. Jacobs argues that Lt. Knight testified that the rights form is signed or refused at the time it is read. Thus, the time stamp, showing when the form was signed or refused, documents the time the form was read.

5

The Department argues that the trial court did not err when it determined that Lt. Knight read Jacobs the rights form prior to the administration of the chemical breath test. It contends that Jacobs's argument incorrectly equates the reading of the form with the signing of the form. It emphasizes that La. R.S. 32:661(C) only requires that law enforcement *read* the rights form prior to the administration of the test; it does not require that the arrestee *sign* the form prior to the administration of the test.

La. R.S. 32:661(C) states:

(1) When a law enforcement officer requests that a person submit to a chemical test as provided for above, he shall first read to the person a standardized form approved by the Department of Public Safety and Corrections. The department is authorized to use such language in the form as it, in its sole discretion, deems proper, provided that the form does inform the person of the following:
    (a) His constitutional rights under Miranda v. Arizona.
    (b) That his driving privileges can be suspended for refusing to submit to the chemical test.
    (c) That his driving privileges can be suspended if he submits to the chemical test and such test results show a blood alcohol level of 0.08 percent or above or, if he is under the age of twenty-one years, a blood alcohol level of 0.02 percent or above.
    (d) That his driving privileges can be suspended if he submits to the chemical test and the test results show a positive reading indicating the presence of any controlled dangerous substance listed in R.S. 40:964.
    (e) The name and employing agency of all law enforcement officers involved in the stop, detention, investigation, or arrest of the person.
    (f) That refusal to submit to a chemical test after an arrest for an offense of driving while intoxicated if he has refused to submit to such test on two previous and separate occasions of any previous such violation is a crime under the provisions of R.S. 14:98.2 and the penalties for such crime are the same as the penalties for first conviction of driving while intoxicated.
(2) In addition, the arresting officer shall, after reading said form, request the arrested person to sign the form. If the person is unable or unwilling to sign, the officer shall certify that the

arrestee was advised of the information contained in the form and that the person was unable to sign or refused to sign.

On review of the administrative suspension of a driver's license, the district court is required to conduct a trial *de novo* to determine the propriety of the suspension. *State Dep't of Pub. Safety & Corr. In Matter of Litton*, 51,757 (La. App. 2 Cir. 11/15/17), 245 So. 3d 1075. Such a trial is a civil action amenable to all of the ordinary rules of procedure and proof. *Id.* Further, the fact that this is an action for judicial review of a decision resulting from an administrative hearing does not change the burden of proof placed by law on the plaintiff. *Id.*

A court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. *Rosell v. ESCO*, 549 So. 2d 840 (La. 1989). The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court. *Id.* If the trial court's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Id.*

This is a factual dispute regarding when Lt. Knight read the rights form to Jacobs. Although the trial court determined that Lt. Knight read Jacobs the rights form before he submitted to the chemical breath tests, the trial court's finding is clearly wrong and is not reasonable in light of the record in its entirety.

The record does not indicate that Lt. Knight sufficiently complied with La. R.S. 32:661(C). According to the state's case, Lt. Knight read the rights form to Jacobs at 10:50 p.m., approximately three minutes after

7

Jacobs was taken into custody; Lt. Knight left Jacobs in the DWI interview room for 21 minutes; Lt. Knight administered Jacobs's first chemical breath test at 11:17 p.m.; Lt. Knight administered Jacobs's second chemical breath test at 11:27 p.m.; and Jacobs refused to sign the rights form at 12:02 a.m. This timeline presents the physical and logical impossibility that Lt. Knight was able to transport Jacobs to OCC and read him his rights within three minutes of arresting him. There is also not sufficient time in this timeline for Lt. Knight to observe Jacobs for 15 minutes prior to administering the first test to ensure that he did not ingest alcohol, regurgitate, vomit or take anything by mouth. La. R.S. 32:663; La. Admin. Code tit. 55, pt. I, § 514. We note that times of the chemical breath tests were time stamped by the Intoxilyzer but Lt. Knight manually entered the time that he allegedly read the rights form to Jacobs.

Lt. Knight's testimony is contradictory and is contrary to the documentary evidence. He stated that his practice was to read the rights form to the person, print the form from the LADRIVE system and then have the person sign the form. Although Lt. Knight testified that he read the rights form before administering the test, the testing equipment recorded that the rights form was signed, or there was a refusal to sign, after the test was performed.

Accordingly, this assignment of error has merit. Considering this determination, we need not discuss Jacobs's remaining assignment of error.

### CONCLUSION

For the following reasons, we reverse the judgment of the trial court, render judgment in favor of Plaintiff-Appellant Barry L. Jacobs and reinstate his commercial driver's license. Costs of this appeal are assessed to

8

Defendant-Appellee The State of Louisiana, Department of Public Safety,

License Control and Driver Improvement Division, in the amount of

$863.50.

**REVERSED AND RENDERED**.